**In re Tatiana COMPANN, Debtor.**

**No. 09–82626–MHM.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Sept. 30, 2010.

---

Thomas J. Reichard, Clark & Washington, P.C., Atlanta, GA, for Debtor.

Adam M. Goodman, Atlanta, GA, Chapter 13 Trustee.

## ORDER SUSTAINING TRUSTEE'S OBJECTION TO PLAN

MARGARET H. MURPHY,
Bankruptcy Judge.

Chapter 13 Trustee ("Trustee") objects to confirmation of Tatiana Compann ("Debtor"). Trustee asserts Debtor incorrectly deducts business expenses from current monthly income through Official Form 22C ("Form 22C") and as a result, her plan does not provide for the correct applicable commitment period of 60 months. Debtor's plan has been conditionally confirmed, subject to determination of the correct applicable commitment period. For the reasons set forth below, Debtor's plan must extend 60 months.

## I. STATEMENT OF FACTS

Debtor, a 63-year-old, single woman, is a self-employed skin care consultant and a Georgia resident. On August 29, 2009, Debtor filed a voluntary bankruptcy petition initiating a Chapter 13 case. With her Chapter 13 petition, Debtor filed her complete Schedules.[1] (Doc. No. 1, pp. 14–40). Average monthly income shown on Schedule I is $3,700. (Doc. No. 1, p. 25). Debtor's Schedule J shows monthly expenses, tallying $3,280, and the difference (*i.e.*, disposable income) is $420. (Doc. No. 1, p. 26). Line 16 of Debtor's Schedule J includes $350 in "regular expenses from operation of business." (Doc. No. 1, p. 26). The itemized statement attached to Schedule J expenses shows Debtor's business expenses are $250 for rent and $1000 for supplies. (Doc. No. 1, p. 28). While this amount obviously adds up to $1,250, Debtor's itemized statement provides a total of only $350. (Doc. No. 1, p. 28). Debtor's Form 22C shows $900 in "ordinary and necessary business expenses" (line 3b.), and Debtor's applicable commitment period as 3 years. (Doc. No. 1, p. 33).

In her Chapter 13 plan, Debtor proposes to pay $420 per month and shows the applicable commitment period as 36 months. (Doc. No. 2, p. 1). Debtor's plan estimates that Debtor's total general unsecured debt not separately classified is $73,922. (Doc. No. 2, p. 5). Debtor's plan provides an $18,000 pool to be paid *pro rata* to her general unsecured creditors. (Doc. No. 2, p. 5).

Debtor's first amendment to the Schedules, filed October 22, 2009, updated Schedule I, Schedule J, and Form 22C. (Doc. No. 15, pp. 4–14). The first amended Schedule I average monthly income is

---

[1] Section 521(a) and Bankruptcy Rule 1007(b) require a debtor to file schedules of assets and liabilities, a schedule of current income and expenditures, a schedule of executory contracts and unexpired leases, and a statement of financial affairs (the "Schedules"). Section 521(a) also requires the filing of Debtor's pay advices.

$3,700; the first amended Schedule J average monthly expenses are $3,280 and monthly net disposable income is $420. (Doc. No. 15, pp. 4–5). The "regular expenses from operation of business" on line 16 of the first amended Schedule J are $350; however, the attached detailed itemization of business expenses, $250 for rent and $300 for supplies, totals $550. (Doc. No. 15, pp. 5, 7).

Debtor's first amended Form 22C reflects, at line 3.a., Debtor's gross monthly business receipts of $3,500, and at line 3.b., "ordinary and necessary business expenses" of $350. (Doc. No. 15, p. 8). The difference between these amounts, $3,150, is recorded in "Column A." (Doc. No. 15, p. 8).

The median family income applicable in this case is $40,760. Line 16, first amended Form 22C (Doc. No. 15, p. 9). If business expenses are deducted on line 3.b., Debtor's current monthly income, $37,800, is below the applicable median.[2] Without business expenses deducted on Line 3.b., Debtor's annualized current monthly income of $42,000 is above the applicable median.[3]

Debtor's second amendment to the Schedules, also filed October 22, 2009, amended Schedule I and Schedule J; however, the only change was the attached itemized statement of Schedule J business expenses: $250 for rent and $1,000 for supplies. (Doc. No. 16, pp. 4–7). While this amount totals $1,250, Debtor's itemized statement and Schedule J record a total of $350. (Doc. No. 15, p. 7).

Debtor's amended plan, filed January 13, 2010, proposes to pay $890 per month to general unsecured debt not otherwise classified and shows the applicable commitment period as 36 months. (Doc. No. 21, pp. 1, 5). Debtor's amended plan estimates her total general unsecured debt not separately classified as $73,922 and provides a pool of $43,439 to be paid over 55 months to Debtor's general unsecured creditors. (Doc. No. 21, p. 5; Doc. No. 27, p. 5).

Debtor's third amendment to the Schedules, also filed January 13, 2010, amends her Schedule I and Schedule J again. (Doc. No. 22, pp. 4–7). The third amended Schedule I average monthly income is $4,200, $500 of which is an anticipated post-petition part-time job (Line 13)[4] and $3,700 from her business. (Doc. No. 22, p. 4). Debtor's third amended Schedule J shows average monthly expenses as $3,310 and monthly net income as $890. (Doc. No. 22, p. 5). Line 16 of Debtor's third amended Schedule J shows, again, $350 in regular expenses from operation of Debtor's business. (Doc. No. 22, p. 5). The detailed statement of Schedule J expenses shows business expenses as $250 for rent and $100 for supplies, for a total of $350. (Doc. No. 22, p. 7). Despite the lack of consistency in reporting Debtor's itemized business expenses, she consistently concludes the total is $350, the lowest sum of the varyingly reported business expenses.

## II. CONCLUSIONS OF LAW

Current Monthly Income ("CMI") is defined in § 101(10A) as "the average monthly income from all sources that the debtor receives" in the six months *prior* to filing the § 521(a)(1)(B)(ii) schedule of current income. Part I of Form 22C, entitled "Report of Income," considers income received by a debtor within six months pre-

---

2. $3,150 × 12 = $37,800.

3. $3,500 × 12 = $42,000.

4. As the $500 per month will be received post-petition, an amended Form 22C is unnecessary.

petition from a sources, which are indicated categorically within lines 2 through 9 of Form 22C. Included in these categories, on line 3, is "Income from the operation of a business, profession, or farm." Line 3 contains three parts: (1) Line "a" is designated "gross receipts"; (2) Line "b" is designated "ordinary and necessary operating expenses"; and (3) Line "c" directs that debtor subtract Line b from Line a and enter the result on Line 3 of Column A. Lines 10 and 11 of Form 22C total the entries from lines 2 through 9. This procedure allows for a net, rather than gross amount of both business income and real property rental income [5] to be added into a debtor's CMI.

"Applicable commitment period" is explained in § 1325(b)(4)(A) as "(i) 3 years; or (ii) not less than 5 years, if the current monthly income of the debtor . . . when multiplied by 12, is not less than—in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner." Section 1325(b)(4)(B) further adds, "[the applicable commitment period] may be less than 3 or 5 years, whichever is applicable under subparagraph (A), *but only if the plan provides for payment in full of all allowed unsecured claims* over a shorter period." (emphasis added).

Part II of Form 22C uses a debtor's total monthly income, as determined in Part I, to calculate a debtor's annualized CMI (*i.e.,* CMI multiplied by 12). Annualized CMI is then compared to the applicable median income. Annualized CMI greater than the applicable median necessitates a commitment period of five years;

CMI below the applicable median necessitates a commitment period of only three years.[6]

Disposable income is defined in § 1325(b)(2) as "current monthly income received by the debtor . . . less amounts reasonably necessary to be expended." Section 1325(b)(2)(B) also provides for deduction, "if the debtor is engaged in business," of amounts reasonably necessary for "payment of expenditures necessary for the continuation, preservation, and operation of such business."

## III. DISCUSSION

**The Bankruptcy Code *Does Not Allow* a Business Expense Deduction From a Debtor's CMI Prior to Being Annualized**

█ In the Bankruptcy Code, determination of the applicable commitment period begins with the calculation of a debtor's CMI. Section 101(10A)(B) enumerates certain categories of payments excluded from a debtor's CMI. Significantly, **business expenses are not excluded from income in** § 101(10A). "This section defines gross income, not net income, as current monthly income—nothing in 11 U.S.C. § 101(10A) indicates that expenses, whether business or personal, may be deducted in determining current monthly income." *In re Arnold,* 376 B.R. 652, 654 (Bankr. M.D.Tenn.2007).

Line 3 of Form 22C, however, plainly allows "ordinary and necessary operating expenses" to be subtracted from the "gross receipts" of any income received from the operation of a business. In a

---

**5.** Line 4 of Form 22C contains a mechanism similar to line 3, which subtracts "ordinary and necessary operating expenses" from gross receipts of rents and other real property income received by a debtor.

**6.** This provision of Form 22C is the genesis for the colloquially known "means test" for which the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109–8, 119 Stat. 23 ("BAPCPA"), is most famous. Most of the provisions had an effective date of October 17, 2005.

practical, logical, and common sense approach to the income a debtor could expect to receive monthly, Form 22C uses net, rather than gross, business income to calculate a debtor's CMI. Such a result, however, is inconsistent with § 101(10A).

■ An objection to confirmation triggers the § 1325(b) disposable income test. The disposable income test subtracts business expenses from CMI in one of only two ways, depending on a debtor's annualized CMI. Debtors with annualized CMI less than the applicable median family income have business expenses subtracted from their CMI under 11 U.S.C. § 1325(b)(2)(A) and (B). *In re Arnold,* 376 B.R. 652, 654 (Bankr.M.D.Tenn.2007). If, however, a debtor has an annualized CMI greater than the applicable median, then business expenses are subtracted from CMI under 11 U.S.C. § 1325(b)(3) and 11 U.S.C. § 707(b)(2)(A) and (B). *See also Id.* In neither of these two scenarios is a business expense deduction applied to the § 101(10A) calculation of CMI. The calculation prescribed by the statute is neither practical, logical, nor consistent with common sense, but the statute enacted by Congress prevails over forms promulgated by the Judicial Conference.

As the facts of this case illustrate, a debtor's applicable commitment period is significantly altered when CMI is calculated *with* a business expense deduction. In certain circumstances, "deducting business expenses to compute current monthly income will place some business debtors at below-median income, entitling them to the three-year, rather than five-year, applicable commitment period." *Drummond v. Wiegand (In re Wiegand),* 386 B.R. 238, 241 (9th Cir. BAP 2008). Debtor's amended Form 22C provides a perfect example of this phenomenon, as Debtor's *applicable commitment period* is initially contingent upon the inclusion or absence of a business expense deduction.[7]

■ The Bankruptcy Code avoids problems with computing the applicable commitment period by purposefully providing for business expense deductions. Business expense deductions "are authorized under § 1325(b)(2)(B) and, therefore, are to be subtracted from current monthly income when calculating disposable income pursuant to § 1325(b)(2)." *Drummond v. Wiegand (In re Wiegand),* 386 B.R. 238, 239 (9th Cir. BAP 2008). In other words, business expenses should not be deducted when calculating CMI,[8] but should be deducted when calculating § 1325(b)(2) disposable income. Therefore, even though Debtor correctly computed CMI and disposable income as directed by the Official Form 22C, that computation does not comply with the requirements of the Bankruptcy Code. Under the strictures of the Bankruptcy Code, Debtor improperly deducted business expenses in Part I of Form 22C.

The conclusion that business expenses may not be deducted from business income in Part I to reach net business income highlights the prejudicial treatment shown to sole proprietors under the BAPCPA. Section 101(10A) uses gross business reve-

7. Debtor's third amended Schedule I shows $500 in additional monthly income from an anticipated, postpetition, part-time job that was not included in Debtor's amended Form 22C. If Debtor had had the job pre-petition, the additional $500 could be included in Part I of Debtor's amended Form 22C and would yield an annualized monthly income that is above median, irrespective of whether a business expense deduction is taken.

8. Among bankruptcy practitioners and interpreters, CMI has been soundly noted to be neither "current," nor "monthly," nor "income." The concept is more akin to "defined monthly income."

nue to calculate a debtor's CMI. *See In re Arnold,* 376 B.R. 652, 654 (Bankr. M.D.Tenn.2007). Sole proprietors, however, must invest in business expenses, such as inventory, raw materials and equipment, prior to generating any revenue. The real income of a sole proprietor is the difference between gross revenue and expenses (*i.e.,* net revenue). Section 101(10A) artificially inflates the CMI of sole proprietors because it counts as income the revenue that is in fact consumed by business expenses, forcing a longer commitment period. 11 U.S.C. § 1325(b)(4).

## IV. CONCLUSION

The central question in this case is whether a debtor's business expenses may be deducted from their CMI prior to its being annualized. "To the extent that Part I of Form 22C requires a business debtor to calculate current monthly income by subtracting ordinary and necessary business expenses from gross receipts," Part I of Form 22C is inconsistent with § 1325(b)(2). *Drummond v. Wiegand (In re Wiegand),* 386 B.R. 238, 239 (9th Cir. BAP 2008). Other courts faced with this same question have characterized the analysis as, "The Bankruptcy Code v. The Official Bankruptcy Forms." *In re Arnold,* 376 B.R. 652, 653 (Bankr.M.D.Tenn. 2007). In this case, Trustee's objection is sustained "because as we all know, the Bankruptcy Code always wins," no matter how poorly drafted. *Id.*[9] Accordingly, it is hereby

**ORDERED** that Trustee's objection to Debtor's plan is *sustained.* Debtor's proper applicable commitment period is sixty (60) months; accordingly, within 28

days of the date of entry of this order, Debtor may file an amended plan and seek a rescheduled confirmation hearing, or may file a motion to dismiss. If Debtor fails to file either, the plan shall be deemed amended to change the applicable commitment period from 36 to 60 months.

IT IS SO ORDERED.

---

**9.** Some may argue that Congress' departure from standard accounting principles is so anomalous and arbitrary that, assuming it is an error, we should not apply the statute as written; however, the job of the judiciary is not to rewrite the law, but to apply it as written.