**In re Douglas W. HARKINS and Shelly A. Harkins, Debtors.**

**In re Charles Francis Mancino and Deborah Dawn Holdren, Debtors.**

**In re Richard E. Louden and Theresa A. Louden, Debtors.**

Nos. 12–51446, 12–52555, 12–53893.

United States Bankruptcy Court, S.D. Ohio, Eastern Division, at Columbus.

May 1, 2013.

---

Scott R. Needleman, Columbus, OH, for Debtor and Joint Debtor.

*MEMORANDUM OPINION AND ORDER ON TRUSTEE'S OBJECTIONS TO CONFIRMATION OF CHAPTER 13 PLANS*

JOHN E. HOFFMAN, JR., Bankruptcy Judge.

## I. Introduction

As part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Congress added the term "current monthly income" to the Bankruptcy Code. The definition of that term in 11 U.S.C. § 101(10A)—and its use in various other sections of the Bankruptcy Code—have generated numerous interpretive issues. The issue before the Court is whether, for the purpose of calculating current monthly income, self-employed Chapter 13 debtors may use a net business income figure arrived at by deducting their ordinary and necessary business expenses. Self-employed debtors do just that if they follow Official Form 22C—Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income ("Form 22C").[1] While some courts have upheld Form 22C's approach, others permit debtors engaged in business to deduct reasonably necessary business expenses only as part of the calculation of their "disposable income," as that term is defined in § 1325(b)(2).

---

1. Form 22C is available on a website of the Administrative Office of the U.S. Courts, at http://www.uscourts.gov/uscourts/RulesAnd Policies/rules/BK_Forms_Current/B_22C.pdf.

■ What difference does it make whether debtors deduct business expenses when calculating current monthly income instead of when determining disposable income? Among other things, it can affect the minimum duration of a debtor's plan. A Chapter 13 debtor's "applicable commitment period" (the minimum duration of his or her plan) is *three years* if the annualized current monthly income of the debtor and the debtor's spouse combined is *below* the relevant median family income, but is *five years* if the annualized current monthly income of the debtor and the debtor's spouse combined is equal to or *above* the relevant median family income. *See Baud v. Carroll,* 634 F.3d 327, 335 & n. 5 (6th Cir.2011)(addressing the interaction of §§ 1322(d) and 1325(b)(4)), *cert. denied,* —— U.S. ——, 132 S.Ct. 997, 181 L.Ed.2d 732 (2012). If the debtors in the above-captioned cases (collectively, "Debtors") are permitted to use the current monthly income figures derived from their calculations on Form 22C, they are below-median-income debtors and have applicable commitment periods—as they propose in their Chapter 13 plans—of three years. By contrast, if the Debtors must calculate their current monthly income without subtracting business expenses, they are above-median-income debtors with applicable commitment periods of five years. In his objections to confirmation of the Debtors' plans ("Objections"), Chapter 13 Trustee Jeffrey P. Norman ("Trustee") argues that the latter approach is the one the Debtors must take when calculating their current monthly income and that their applicable commitment periods are therefore five years.

The Court concludes that calculating current monthly income without deducting business expenses is more consistent with the Bankruptcy Code than is Form 22C's method. Although the definition of current monthly income in and of itself is ambiguous, and although the use of the term in the "means test" of § 707(b)(2) does not provide a definitive answer as to its meaning, its use in § 1325(b) makes clear that business expenses should not be deducted when calculating current monthly income. After subtracting certain kinds of payments not at issue in these cases, current monthly income is the starting point for calculating disposable income and, ultimately, the projected disposable income that debtors must pay to unsecured creditors in order to overcome an objection to plan confirmation. *See* 11 U.S.C. § 1325(b). From that starting point, debtors who are engaged in business are permitted to deduct, among other reasonably necessary expenses, "expenditures necessary for the continuation, preservation, and operation of such business." 11 U.S.C. § 1325(b)(2)(B). Use of the net-income method, therefore, would either permit a double deduction of business expenses or would render § 1325(b)(2)(B) surplusage.

The Debtors make a number of arguments in favor of the net-income method, but at the heart of those arguments is this: As self-employed debtors, they will be treated differently than other debtors if they are not permitted to deduct business expenses when calculating current monthly income. But permitting Chapter 13 debtors engaged in business to deduct business expenses only when calculating disposable income will not "lead to patently absurd consequences, that Congress could not possibly have intended[.]" *Pub. Citizen v. United States Dep't of Justice,* 491 U.S. 440, 470, 109 S.Ct. 2558, 105 L.Ed.2d 377 (1989) (Kennedy, J., concurring) (citation and internal quotation marks omitted).

In the final analysis, there is a conflict between an official form and the Bankruptcy Code. When that is the case, the Bankruptcy Code prevails. For all these rea-

sons, which are explained in greater detail below, the Objections are sustained.

## II. Jurisdiction

The Court has jurisdiction to hear and determine these contested matters pursuant to 28 U.S.C. §§ 157 and 1334 and the general order of reference entered in this district. This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(L).

## III. Background

■ Although the details vary, the basic facts of the Debtors' cases—at least as those facts relate to the legal issue before the Court—are essentially the same. The Debtors in each case completed Form 22C.[2] Prior to the commencement of their bankruptcy cases, at least one of the Debtors in each case derived a certain amount of income from self employment. In the section of Form 22C in which they begin to calculate their current monthly income, the Debtors listed an amount of gross receipts from the operation of a business on Line 3(a) and deducted what they identified as ordinary and necessary business expenses on Line 3(b). They then subtracted Line 3(b) from Line 3(a), resulting in their net business income and included the sum of this net business income and any other income on Line 11 as the their total income. After multiplying that figure by 12, they entered the product as their "annualized current monthly income for [purposes of] § 1325(b)(4)" on Line 15. Calculated in this way, the annualized current monthly income for each of the Debtors is below the applicable median family income. But if the business expenses had not been deducted on Line 3(b), the annualized current monthly income for each of the Debtors would have been above the applicable median family income. On their Forms 22C, the Debtors stated that their applicable commitment period is three years.

The Debtors also all filed Chapter 13 plans in which they stated that they are below median income debtors. The Trustee filed objections to confirmation in each of the cases on several grounds, including the one at issue here—that the Debtors may not subtract their business expenses from gross receipts for the purpose of calculating current monthly income and that the applicable commitment period is five years.[3]

---

**2.** All Chapter 13 debtors are required to complete Form 22C. This is not a Bankruptcy Code-based requirement; rather, it is imposed by Rule 1007(b)(6) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rule(s)"), which provides that "[a] debtor in a chapter 13 case shall file a statement of current monthly income, prepared as prescribed by the appropriate Official Form, and, if the current monthly income exceeds the median family income for the applicable state and household size, a calculation of disposable income made in accordance with § 1325(b)(3), prepared as prescribed by the appropriate Official Form." Fed. R. Bankr.P. 1007(b)(6). Part I of Form 22C contains various lines for reporting the income of both a debtor and a debtor's spouse. These data-entry lines encompass several common types of income: gross wages; business income; rental income; interest, dividend and royalty income; pension and retirement income; unemployment compensation; regular payments by a third party of the household expenses of the debtor or the debtor's dependents, including child support; and all other forms of income. Line 3(a) of Form 22C requires a Chapter 13 debtor to list gross receipts from the operation of a business and Line 3(b) instructs the debtor to subtract ordinary and necessary business expenses from that figure. The result is listed as the debtor's business income and is added to other reported income in Part I to determine the debtor's total monthly income on Line 11. In Part II of Form 22C, a debtor enters the amount from Line 11, and then subtracts any appropriate marital adjustment. The resulting sum is multiplied by 12 and becomes, on Line 15, the "annualized current monthly income for § 1325(b)(4)."

**3.** In each case, the Court entered an agreed order between the Trustee and the Debtors providing that the Chapter 13 plan satisfies

In support of his position, the Trustee primarily relies on *Drummond v. Wiegand (In re Wiegand)*, 386 B.R. 238 (9th Cir. BAP 2008). In *Wiegand,* the Bankruptcy Appellate Panel for the Ninth Circuit held that "[i]n contrast to the statutory definition of current monthly income, § 1325(b)(2) is plain and unambiguous with specific reference to deductions for business expenses[,]" and that "[w]e can conclude from the statutory language that the specificity of § 1325(b)(2)(B) controls—business deductions are to be taken from a debtor's current monthly income to arrive at the debtor's disposable income." *Wiegand,* 386 B.R. at 242. In their briefs in support of confirmation, the Debtors rely on *In re Roman,* 2011 WL 5593143 (Bankr.D.Puerto Rico Nov. 16, 2011), in which the bankruptcy court held that Form 22C's method of calculating current monthly income is correct because "[t]he use of gross receipts for self-employed debtors would lead to distinctions in the

calculation of current monthly income based on the business form under which the debtor has chosen to operate, resulting in prejudicial treatment to business proprietors[.]" *Id.* at *4. The Debtors also rely on a paper by Mark A. Redmiles & Saleela Khanum Salahuddin, *The Net Effect— Debtors with Business Income Are Permitted to Deduct Ordinary and Necessary Business Expenses in Calculating Current Monthly Income,* 27–OCT Am. Bankr.Inst. J. 16 (October 2008).[4] The Court will discuss these and other authorities below.

## IV. Legal Analysis

In describing a different amendment to the Bankruptcy Code made by BAPCPA, another bankruptcy court observed that "[d]eciphering this puzzle is like trying to solve a Rubik's Cube that arrived with a manufacturer's defect." *In re Donald,* 343 B.R. 524, 529 (Bankr. E.D.N.C.2006).[5] So too here, where the deduction of business expenses seems to be a missing piece in the Rubik's Cube

the three-year applicable commitment period; that the plan is confirmed subject to the terms set forth in the agreed order; that the Trustees's objection to confirmation is held in abeyance pending the Court's decision in this matter; that if the Court sustains the Trustee's objection and holds that the plan must meet the five-year applicable commitment period, the Debtors have 30 days from the entry of the Court's opinion and order in which to file a motion to modify the plan so that it complies with the Court's ruling; and that the failure to so modify the plan would both constitute a material default under the terms of the plan and be grounds for dismissal of the case pursuant to § 1307(c)(6). The Court then entered orders confirming the Debtors' plans. The Debtors' cases were consolidated solely for the purpose of deciding the issue before the Court.

4. This paper also is available at http://www.justice.gov/ust/eo/public_affairs/articles/docs/2008/abi_200810.pdf.

5. *See also Seafort v. Burden (In re Seafort),* 669 F.3d 662, 671 (6th Cir.2012) ("As in *Baud,* we are faced with a statute that is

inelegantly drafted and therefore we must adopt an interpretation from competing theories that is not only more consistent with the language of the statute than the competing interpretation[s], but that also is consistent with the legislative history and the overriding purpose of BAPCPA.") (internal quotation marks omitted); *Baud,* 634 F.3d at 339 ("It could be argued that, had Congress intended to impose maximum plan lengths as well as a minimum time for the payments of projected disposable income in response to an objection, addressing the two requirements in separate statutory sections—§§ 1322(d) and 1325(b)—was an inelegant way to accomplish this goal."); *Dumont v. Ford Motor Credit Co. (In re Dumont),* 581 F.3d 1104, 1110 (9th Cir.2009) ("We agree that BAPCPA is hardly the very model of a well-drafted statute."); Hon. Keith M. Lundin, *Ten Principles of BAPCPA: Not What Was Advertised,* 24–Sep. Am. Bankr.Inst. J. 1, 70 (Sept. 2005) ("The list of drafting errors and incomprehensible provisions grows every day as bankruptcy professionals digest BAPCPA.").

that is BAPCPA. But "[f]ortunately, after many twists and turns, a few patches of solid color emerge." *Id.*

### A. The Definition of Current Monthly Income in § 101(10A)

 The Court's "interpretation of the Bankruptcy Code starts where all such inquiries must begin: with the language of the statute itself." *Ransom v. FIA Card Servs., N.A.,* — U.S. —, 131 S.Ct. 716, 723, 178 L.Ed.2d 603 (2011) (internal quotation marks omitted). Because § 101(10A) defines current monthly income, the Court begins with that section:

The term "current monthly income"—

(A) means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6–month period ending on—

(i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii); or

(ii) the date on which current income is determined by the court for purposes of this title if the debtor does not file the schedule of current income required by section 521(b)(1)(B)(ii); and

(B) includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent), but excludes benefits received under the Social Security Act, payments to victims of war crimes or crimes against humanity on account of their status as victims of such crimes, and payments to victims of international terrorism (as defined in section 2331 of title 18) or domestic terrorism (as defined in section 2331 of title 18) on account of their status as victims of such terrorism.

11 U.S.C. § 101(10A). Under this section, the Debtors' current monthly income is the average monthly income they receive from all sources, without regard to whether such income is taxable, derived during the six full calendar months preceding the filing of their bankruptcy petitions; their current monthly income includes amounts paid by any entity other than the Debtors on a regular basis for the household expenses of the Debtors or the Debtors' dependents, but excludes specified kinds of benefits and payments.

### 1. The Tax Code's Definition of Income

 The term "income" is not defined in the Bankruptcy Code. The Debtors argue that a self-employed debtor's current monthly income must be net of expenses in order to be congruous with a self-employed person's gross income for tax purposes, which includes only the net income generated by his or her business. But current monthly income is to be calculated "without regard to whether such income is taxable income...." 11 U.S.C. § 101(10A)(A). *See also Blausey v. United States Trustee,* 552 F.3d 1124, 1132 (9th Cir.2009) ("The phrase 'without regard to whether such income is taxable income' in 11 U.S.C. § 101(10A)(A) reflects Congress' judgment that the Internal Revenue Code's method of determining taxable income does not apply to the Bankruptcy Code's calculation of [current monthly income]."); *Wiegand,* 386 B.R. at 242 ("[W]e conclude that the plain language of the statute demonstrates that the bankruptcy

court's reliance on the Tax Code and Form 1040 to determine the meaning of income under § 101(10A) was misplaced. The phrase 'without regard to whether such income is taxable income' in § 101(10A) reflects a clear congressional intent that Tax Code concepts for determining taxable income are inapplicable to a determination of current monthly income.").[6] The Tax Code, therefore, is not the appropriate guidepost for determining the meaning of current monthly income.

### 2. The Census Bureau's Definition of Income

A Chapter 13 debtor's applicable commitment period depends on whether the annualized current monthly income of the debtor and the debtor's spouse combined is above or below the applicable state's median family income for the relevant family size. And the Bankruptcy Code defines median family income as "the median family income both calculated and reported by the Bureau of the Census...." 11 U.S.C. § 101(39A). The Census Bureau indicates that the American Community Survey is its source for state median family income,[7] and the American Community Survey uses net business income. See U.S. Census Bureau, American Community Survey and Puerto Rico Community Survey, 2011 Subject Definitions at 78 (stating that total income includes "net self-employment income") & 79 (defining farm self-employment income as including "net money income (gross receipts minus operating expenses)" and non-farm self-employment income as including "net money income (gross receipts minus expenses)....").[8]

In an argument the Trustee does not address, the Debtors contend that the Bankruptcy Code's method for calculating a self-employed debtor's current monthly income must be congruous with the Census Bureau's method for determining each state's median family income by family size.[9] But the notion that Congress intended there to be a one-to-one correspondence between the method for calculating current monthly income under § 101(10A)

**6.** *Cf. Wolkowitz v. Breath of Life Seventh Day Adventist Church (In re Lewis)*, 401 B.R. 431, 440 (Bankr.C.D.Cal.2009) ("The Ninth Circuit Court of Appeals and the Ninth Circuit BAP [have] pointed out that because § 101(10A) contains the phrase 'without regard to whether such income is taxable income,' Congress intended that Internal Revenue Code concepts not apply when determining a debtor's current monthly income. Since § 548 does not contain similar exclusionary language, this Court is not restricted from using the Internal Revenue Code in defining 'gross annual income' for purposes of § 548(a)(2).'").

**7.** *See* http://www.census.gov/hhes/www/income/data/statemedian/.

**8.** The American Community Survey and Puerto Rico Community Survey 2011 Subject Definitions ("Community Survey Definitions") are available at http://www.census.gov/acs/www/Downloads/data_documentation/Subject Definitions/2011_ACSSubjectDefinitions.pdf.

**9.** This position has its supporters. *See* Redmiles & Salahuddin, *supra*, at 57 ("[F]ollowing the *Wiegand* approach to calculating current monthly income would result in an inconsistent 'apples to oranges' comparison of the debtor's income figure based on gross business receipts with the Census Bureau's median income figures, which are based on net income amounts."); Robert M. Lawless, *A Few Recent Developments in the Bankruptcies of Small Businesses and Their Owners*, 29 No. 1 Bankr.L. Letter 1, 6 (Jan. 2009) ("[U]sing net business income as the definition of CMI matches up with the Census Bureau's definition of income, which is used as the benchmark for determining above-median and below-median debtors. The *Wiegand* approach of excluding business expenses creates a mismatch where a self-employed debtor compares his or her gross income to a statistical aggregate that represents a net income figure and artificially pushes self-employed debtors into five-year plans." (footnote omitted)).

and the Census Bureau's method for calculating median family income is belied by the fact that § 101(10A) is inconsistent with the Community Survey Definitions in other ways. For example, the Census Bureau includes two sources of income that cause its calculation of median family income to be higher than would be calculated using § 101(10A). The Census Bureau includes Social Security payments within family income, Community Survey Definitions at 78–80, but § 101(10A)(B) expressly excludes "benefits received under the Social Security Act" from current monthly income. 11 U.S.C. § 101(10A)(B). The Census Bureau also includes within family income "the incomes of all members 15 years old and over related to the householder[,]" which "are summed and treated as a single amount[,]" Community Survey Definitions at 81, while under § 101(10A)(B) amounts paid by persons other than the debtor would be included in current monthly income only if those amounts were paid "on a regular basis for the household expenses of the debtor or the debtor's dependents...." 11 U.S.C. § 101(10A)(B).

■ On the other side of the ledger, just as it excludes from income amounts used to pay business expenses, the Census Bureau excludes from income "lump-sum inheritances" and "other types of lump-sum receipts." Community Survey Definitions at 78. Yet courts have held that each of those must be included in the calculation of current monthly income. See In re Stanley, 438 B.R. 860, 863–64 (Bankr. D.S.C.2010) (requiring a lump-sum inheritance to be included in the calculation of current monthly income); In re Cotto, 425 B.R. 72, 75 (Bankr.E.D.N.Y.2010) ("While Debtors argue for the exclusion of the Wage Settlement based on the fact that it is a one time only payment, § 101(10A) does not distinguish between income that

is non-recurring and income that will be received on an ongoing basis."). In short, although Congress chose median family income as calculated by the Census Bureau as the benchmark for determining who is above and below median income, it did so despite the fact that § 101(10A)'s definition of current monthly income is not perfectly symmetrical with the Census Bureau's definition of income. As with the Tax Code, the Census Bureau's methodology for determining median family income is not a reliable guide to the meaning of current monthly income.

### 3. Dictionary Definitions of Income

■ Because the Bankruptcy Code does not define income, and because neither the definition used by the Internal Revenue Service nor the Census Bureau is determinative, the Court must look to the term's "ordinary meaning." *Hall v. United States*, — U.S. —, 132 S.Ct. 1882, 1887, 182 L.Ed.2d 840 (2012) (internal quotation marks omitted). "A word's ordinary meaning is often determined by reference to dictionaries." *Terrell v. United States*, 564 F.3d 442, 451 (6th Cir.2009). *See also Inverness Med. Switzerland GmbH v. Princeton Biomeditech Corp.*, 309 F.3d 1365, 1369 (Fed.Cir.2002) ("It is well settled that dictionaries provide evidence of a ... term's 'ordinary meaning.' ... Such dictionaries include dictionaries of the English language, which in most cases will provide the proper definitions and usages, and technical dictionaries, encyclopedias and treatises, which may be used for established specialized meanings in particular fields of art."). It has been argued that the ordinary meaning of income in the business context denotes net income. *See* Lawless, *supra*, at 7 ("In accounting conventions, one starts with 'revenues' or 'receipts' and deducts expenses to arrive at 'income.' The Webster's that has served me since college similarly reports that in-

come is the 'gain or recurrent benefit . . . that derives from capital or labor,' implying a net outcome to the recipient. Under this logic, the deduction of business expenses is implicit in the calculation of income—the 'I' in CMI.") (footnote omitted); Hon. W. Homer Drake, Hon. Paul W. Bonapfel & Adam M. Goodman, *Chapter 13 Practice & Procedure* § 9F:35 (2013) ("The usual notion of 'income' in the context of a business enterprise is net income, that is, the amount remaining after costs of goods sold, operating expenses, and other costs incurred to produce income.").

In reviewing English language and technical dictionaries, however, the only thing that becomes clear is that income has more than one ordinary meaning, even in the business context. The *Merriam–Webster Unabridged Dictionary* provides a definition that arguably means net income ("a gain or recurrent benefit that is usually measured in money and for a given period of time"), but then provides two other definitions that denote gross receipts: "commercial revenue or receipts of any kind except receipts or returns of capital" and "the value of goods and services received by an individual in a given period of time[.]" *Merriam–Webster Unabridged Dictionary,* available at http://unabridged. merriam-webster.com/unabridged/income. The definition set forth in *Black's Law Dictionary*—"[t]he money or other form of payment that one receives, usu. periodically, from employment, business, investments, royalties, gifts, and the like[,]" *Black's Law Dictionary* (9th ed. 2009)— also denotes gross receipts. Like the Merriam–Webster dictionary, a well-known accounting dictionary includes definitions of income suggesting both gross receipts and net income. *See* Jae K. Shim & Joel G. Siegel, *Dictionary of Accounting Terms* 235 (5th ed. 2010) (defining income as follows: "1. money earned during an accounting period that results in an in-

crease in total assets. 2. items such as rents, interest, gifts, and commissions. 3. revenues arising from sales of goods and services. 4. excess of revenues over expenses and losses for an accounting period (i.e., net income)."). Another technical dictionary does not even attempt to define income, *see* John Downes & Jordan Elliot Goodman, *Dictionary of Finance and Investment Terms* 472 (8th ed. 2010), perhaps reflecting the term's inherent ambiguity.

### 4. Section 101(10A)

■■■■■ For purposes of statutory interpretation, though, "[a]mbiguity is a creature not of definitional possibilities but of statutory context." *Brown v. Gardner,* 513 U.S. 115, 118, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994). That is, "[t]he meaning—or ambiguity—of certain words or phrases may only become evident when placed in context." *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.,* 529 U.S. 120, 132, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000). Accordingly, "[t]he plainness or ambiguity of statutory language is determined by reference to [not only] the language itself, [but also to] the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.,* 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). The Trustee suggests that the specific context provided by § 101(10A)(A) and (B) demonstrates that current monthly income for self-employed debtors cannot be net of expenses:

A plain reading of 11 USC § 101(10A) [ (A) and (B) ] cannot lead to any other result. The term "current monthly income" is defined as the "average monthly income from all sources" and only excludes "benefits received under the Social Security Act, payments to victims of war crimes or crimes against humani-

ty on account of their status as victims of such crimes and payments to victims of international terrorism ... or domestic terrorism ... on account of their status as victims of such terrorism." There is no mention in the statute to the deduction of necessary and ordinary business expenses and any allowance thereof by the Court violates the plain reading of the Bankruptcy Code.

Doc. 25 in Case No. 12–51446 at 3–4.

It is true that Congress expressly excluded from the definition of current monthly income benefits received under the Social Security Act and certain other payments, but not income used to pay business expenses. *See In re Compann,* 459 B.R. 478, 481 (Bankr.N.D.Ga.2010) ("Section 101(10A)(B) enumerates certain categories of payments excluded from a debtor's [current monthly income]. Significantly, business expenses are not excluded from income in § 101(10A)."). Congress could have expressly provided in § 101(10A)(B) that current monthly income for self-employed debtors excludes any amount received from the operation of the business that is used to pay business expenses. And there is, of course, "[t]he general rule of statutory construction ... that the enumeration of specific exclusions from the operation of a statute is an indication that the statute should apply to all cases not specifically excluded," also known as "the rule of *expressio unius est exclusio alterius.*" *Blausey,* 552 F.3d at 1133. In *Blausey,* the Ninth Circuit applied this rule in holding that private dis-

ability insurance benefits must be included in the calculation of current monthly income. According to the Ninth Circuit, such benefits fell within all the definitions of income set forth in legal and general English dictionaries, and the fact that Congress excluded certain benefits and payments from current monthly income in § 101(10A)(B), but did not exclude private disability insurance benefits, was an indication that Congress intended those benefits to be included in current monthly income. *Id.*

The Supreme Court, however, has "long held that the *expressio unius* canon does not apply unless it is fair to suppose that Congress considered the unnamed possibility and meant to say no to it...." *Marx v. Gen. Revenue Corp.,* —— U.S. ——, 133 S.Ct. 1166, 1175, 185 L.Ed.2d 242 (2013) (internal quotation marks omitted). Because setting forth in § 101(10A)(B) an exclusion from current monthly income of any amount received from the operation of a business that is used to pay business expenses was unnecessary if current monthly income for self-employed business debtors was already net of expenses (as some of the definitions of income would suggest), it is not fair to suppose that Congress considered excluding those expenses in § 101(10A)(B).[10] By way of another example, Congress did not set forth in § 101(10A)(B) an exclusion from current monthly income for withdrawals made from retirement accounts, yet courts have held that such withdrawals should not be included in the calculation of current

---

**10.** The Bankruptcy Code uses the term "net income" in § 521(a)(1)(B)(v) (debtor's duty to file a "statement of the amount of monthly net income, itemized to show how the amount is calculated") and § 1205(b)(3)(adequate protection in a Chapter 12 case) and uses the term "gross income" in § 101(18)(A) (definition of family farmer); § 101(19A)(A)(ii) (definition of family fisher-man); § 101(20) (definition of farmer); § 101(51B) (definition of single asset real estate); § 346(j)(2) (relating to the treatment of state and local taxes); § 1114(m) (regarding the payment of insurance benefits to retired employees); and § 1325(b)(2)(A)(ii)(part of the definition of disposable income relating to a deduction for charitable contributions).

monthly income because the withdrawals are not income in the first place. *See, e.g., Zahn v. Fink .(In re Zahn)*, 391 B.R. 840, 845 (8th Cir. BAP 2008); *In re Marti*, 393 B.R. 697, 700 (Bankr.D.Neb.2008). The problem with the Trustee's argument, therefore, is that it assumes the conclusion it is trying to prove—that income for self-employed debtors equals their gross receipts.

In short, nothing in § 101(10A) clarifies the meaning of current monthly income. Neither the term "income" nor its use in the specific context of § 101(10A) is determinative of the issue before the Court.

## B. Current Monthly Income and § 707(b)(2)(A)

▇▇▇ The Court accordingly must consider the "broader context of the [Bankruptcy Code] as a whole," *Robinson*, 519 U.S. at 341, 117 S.Ct. 843, starting with § 707(b)(2) and then turning to § 1325(b)(2). Although § 707(b)(2) does not directly apply in Chapter 13 cases, *see* 11 U.S.C. § 103(b), the section is relevant to the issue before the Court because it uses the term "current monthly income" as a starting point for the so-called means test, and because "identical words and phrases within the same statute should normally be given the same meaning." *Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 232, 127 S.Ct. 2411, 168 L.Ed.2d 112 (2007). *See also Patterson v. Shumate*, 504 U.S. 753, 758 n. 2, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992) (stating "that a word is presumed to have the same meaning in all subsections of the same

statute" (internal quotation marks omitted)).[11]

▇▇▇ Section 707(b) provides for the dismissal (or with the debtor's consent, conversion) of a "case filed by an individual [Chapter 7] debtor ... whose debts are primarily consumer debts ... if [the bankruptcy court] finds that the granting of relief would be an abuse of the provisions of this chapter." 11 U.S.C. § 707(b)(1). Section 707(b)(2)(A)(i) then states:

In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debtor's *current monthly income* reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of—

(I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $7,475, whichever is greater; or

(II) $12,475.

11 U.S.C. § 707(b)(2)(A)(i) (emphasis added). That is, under the means test, current monthly income is the starting point from which above-median-income Chapter 7 debtors subtract amounts permitted by the remainder of § 707(b)(2)(A).[12] "Congress adopted the means test—'[t]he heart of [BAPCPA's] consumer bankruptcy reforms,' H.R.Rep. No. 109–31, pt. 1, p. 2 (2005) ... to help ensure that debtors who can pay creditors do pay them." *Ransom*, 131 S.Ct. at 721. "If the debtor's Chapter 7 petition discloses that his disposable income as calculated by the means test exceeds a certain threshold, the petition is presumptively abusive." *Id.* at 722 n. 1.

---

**11.** In addition, as discussed in more detail below, § 707(b)(2)(A) and (B) are referenced in a relevant way in § 1325(b)(3).

**12.** By operation of 11 U.S.C. § 707(b)(7), the means test applies only to above-median-income debtors. Section 707(b)(7) provides

that a motion under § 707(b)(2) cannot be brought if the annualized current monthly income of the debtor and the debtor's spouse combined does not exceed the applicable median family income.

Certain of the Debtors have raised the argument, which the Trustee declined to address, that the means test does not permit Chapter 7 debtors to deduct business expenses and that self-employed debtors therefore must be allowed to deduct them when calculating their current monthly income. *See also* Redmiles & Salahuddin, *supra,* at 56. For example, if a self-employed debtor were not permitted to deduct business expenses when calculating current monthly income, then the possibility exists that such a debtor could have a current monthly income (reduced by expenses other than business expenses) that is sufficiently high to cause the debtor to fail the means test, even though the debtor needs to pay business expenses in order to generate his or her income and therefore does not in fact have the ability to pay creditors above the threshold established by § 707(b)(2)(A)(i). In effect, such a debtor faces the potential dismissal or conversion of the case under § 707(b)(1) merely due to self-employment. *See* Doc. 20 in Case No. 12–52555 at 5–6.[13]

The question, then, is whether the means test permits Chapter 7 debtors to deduct business expenses. In relevant part, § 707(b)(2)(A)(ii), (iii) and (iv) provide as follows:

(ii)(I) The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent. Such expenses shall include reasonably necessary health insurance, disability insurance, and health savings account expenses for the debtor, the spouse of the debtor, or the dependents of the debtor. Notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts.... In addition, if it is demonstrated that it is reasonable and necessary, the debtor's monthly expenses may also include an additional allowance for food and clothing of up to 5 percent of the food and clothing categories as specified by the National Standards issued by the Internal Revenue Service.

. . . .

(V) In addition, the debtor's monthly expenses may include an allowance for housing and utilities, in excess of the allowance specified by the Local Standards for housing and utilities issued by the Internal Revenue Service, based on the actual expenses for home energy costs if the debtor provides documentation of such actual expenses and demon-

---

**13.** Certain of the Debtors argue that the gross-receipts method of calculating current monthly income "exposes a debtor to heightened scrutiny by the U.S. Trustee." Doc. 20 in Case No. 12–52555 at 5. This apparently is a reference to the fact that the means test applies only to above-median-income debtors. *See* Redmiles & Salahuddin, *supra,* at 57 ("[I]f the *Wiegand* rationale for determining current monthly income were extended to chapter 7 cases, a larger number of chapter 7 debtors, unable to deduct ordinary and necessary business expenses from gross receipts, would be considered above-median debtors.... As a result, many below-median income debtors with income from a business, profession or farm would nonetheless be required to complete the more burdensome expense portion of the means test: Official Form 22A, which is applicable to chapter 7 debtors."). The possibility that it might require some self-employed debtors to complete the means test does not, in the Court's view, provide a reason for rejecting the gross-receipts method.

strates that such actual expenses are reasonable and necessary.

(iii) The debtor's average monthly payments on account of secured debts shall be calculated as the sum of—

(I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the filing of the petition; and

(II) any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts;

divided by 60.

(iv) The debtor's expenses for payment of all priority claims (including priority child support and alimony claims) shall be calculated as the total amount of debts entitled to priority, divided by 60.

11 U.S.C. § 707(b)(2)(A)(ii), (iii) and (iv).

Section 707(b)(2)(A) provides for the deduction of standardized figures derived from the IRS National Standards (for food, clothing, certain other living expenses and out-of-pocket health care) and IRS Local Standards (for housing, utilities and transportation expenses). *See* Means Testing: Census Bureau, IRS Data and Administrative Expenses Multipliers, http://www.justice.gov/ust/eo/bapcpa/ meanstesting.htm (last visited April 30, 2013) (listing amounts for Local and National Standards). In addition, the Bankruptcy Code provides for an "additional allowance for food and clothing," 11 U.S.C. § 707(b)(2)(A)(ii)(I), "if it is demonstrated that it is reasonable and necessary," *id.*, as

well as "an allowance for housing and utilities, in excess of the allowance specified by the Local Standards for housing and utilities issued by the Internal Revenue Service, based on the actual expenses for home energy costs if the debtor provides documentation of such actual expenses and demonstrates that such actual expenses are reasonable and necessary." 11 U.S.C. § 707(b)(2)(A)(ii)(V). As with other debtors, to the extent a self-employed debtor's business expenses have, as of the date of the bankruptcy filing, become an unsecured nonpriority claim, monthly expenses of the debtor are not to include any payments for such claims, 11 U.S.C. § 707(b)(2)(A)(ii)(I) (stating that "[n]otwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts"), because an assessment of the debtor's ability to pay such claims is what § 707(b)(2)(A) is designed to provide. To the extent a self-employed debtor's business expenses are in the form of payments on secured debt or priority claims, however, such expenses may be deducted from current monthly income under § 707(b)(2)(A)(iii) and (iv), just as any other secured debts or priority claims may be deducted.

Many self-employed debtors, of course, will have business expenses in addition to those already represented by secured debt and priority claims. It is for those expenses that the "actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides," 11 U.S.C. § 707(b)(2)(A)(ii)(I), come into play. The phrase "categories specified as Other Necessary Expenses" refers to the IRS's Financial Analysis Handbook ("Handbook") found in the Internal Revenue Manual

("IRM").[14] *See* H.R. Rep. 109–31(I), at 13–14 (2005), reprinted in 2005 U.S.C.C.A.N. 88, 99–100 ("In addition to other specified expenses, the debtor's monthly expenses—exclusive of any payments for debts (unless otherwise permitted)—must be the applicable monthly amounts set forth in the Internal Revenue Service Financial Analysis Handbook as Necessary Expenses under the National and Local Standards categories and the debtor's actual monthly expenditures for items categorized as Other Necessary Expenses." (footnotes omitted)); *Clippard v. Ragle (In re Ragle)*, 395 B.R. 387, 391 (E.D.Ky.2008) ("The 'Other Necessary Expenses' referenced by the statute are other expenses allowed by the IRS 'if they meet the necessary expense test—they must provide for the health and welfare of the taxpayer and/or his or her family or they must be for the production of income.' Financial Analysis Handbook, § 5.15.1.10.").

The "Other Expenses" section of the Handbook states as follows: "Other expenses may be Necessary or Conditional. Other Necessary expenses meet the necessary expense test and normally are allowed." IRM § 5.15.1.10. An earlier section of the Handbook provides: "Allowable expenses include those expenses that meet the necessary expense test. *The necessary expense test is defined as expenses that are necessary to provide for a taxpayer's and his or her family's health and welfare and/or production of income.*" IRM § 5.15.1.7. Among the allowable expenses are those based on National and Local Standards and the "Other Necessary Expenses." *Id.* In § 5.15.1.10, the Handbook lists several categories of expense items: accounting and legal fees;

charitable contributions; child care; court-ordered payments; dependant care; education; involuntary deductions; life insurance; secured or legally perfected debts; credit card debts; other unsecured debts; current year taxes; delinquent state and local taxes; optional telephones and telephone services; student loans; and repayment of loans made for payment of federal taxes. IRM § 5.15.1.10. *See* Eugene R. Wedoff, *Means Testing in the New § 707(B)*, 79 Am. Bankr.L.J. 231, 261–63 (2005) (footnote omitted).

The argument that the means test does not permit Chapter 7 debtors to deduct business expenses arises because "Business Expenses" is not a category specified as Other Necessary Expenses in the Handbook. *See Roman*, 2011 WL 5593143, at *3 ("Form B22C provides for reporting of business expenses (Form B22C, Lines 3a to 3c), which are not listed as a specific category under 'Other Necessary Expenses' (Part IV of Form B22C), but rather included for computation of debtor's current monthly income."). Instead, business expenses are addressed in a different section of the Handbook. *See* IRM § 5.15.1.17 ("The IRC permits a taxpayer entity to reduce its income by deducting expenses paid to earn that income."). This, of course, is because the Handbook is using the tax meaning of business income as net income. In apparent recognition of this problem, just as they did with Form 22C, the drafters of the Chapter 7 Statement of Current Monthly Income and Means–Test Calculation ("Form 22A") constructed Form 22A so that self-employed Chapter 7 debtors calculating their current monthly income may use a net business income figure arrived at by deducting their ordinary and

---

**14.** The Handbook is available on the IRS website, at http://www.irs.gov/irm/part5/irm_ 05–015–001.html.

necessary business expenses.[15] But the categories of "Other Necessary Expenses" set forth in the IRM are not exclusive. *See* H.R.Rep. No. 109–31, at 14 n.66 (2005) ("The Internal Revenue Manual does not establish monetary amounts with regard to necessary expenses that it characterizes as 'Other Expenses.' Rather, it provides a *non-exclusive* list of these expenses, that must otherwise satisfy the 'necessary expense test'...." (emphasis added)). Accordingly, courts and commentators have interpreted 11 U.S.C. § 707(b)(2)(A)(ii)(I) as permitting the deduction of business expenses even if they are not represented by secured debt and priority claims and are not encompassed within the categories of food, clothing, housing and utility costs covered by the IRS National Standards or the IRS Local Standards. *See In re Hageney*, 422 B.R. 254, 259 (Bankr. E.D.Wash.2009) ("Expenses under the 'means test' formula for self-employed debtors [are] determined by reference to the 'Other Necessary Expenses' section of the IRS Financial Analysis Handbook, but limits those expenses to those actually incurred by the debtor. The 'Other Necessary Expense' guideline applicable to this case allows business expenses which are necessary 'for the production of income' and 'if the taxpayer substantiates and justifies the expenses.'"). According to Judge Wedoff:

> [It] is not entirely clear what expense items can be deducted as "other necessary expenses"—only those that are within a non-debt category specified in the IRM lists, or any non-debt expense that meets the IRM's 'necessary expense test,' regardless of whether it is included within one of the listed categories. Certainly, expenses in the categories already addressed in the National and Local Standards cannot qualify as 'other' necessary expenses. Expenses for food, clothing, household supplies, personal care, housing, home utilities and transportation are limited by the amounts specified in the earlier standards. On the other hand, all ongoing business expenses—such as cost of goods sold, salaries to employees, and business insurance (in the words of the IRM test, expenses necessary "for the production of income")—should be deductible regardless of their specific inclusion in the "other necessary" lists. The necessary costs of operating a business must be paid if the business is going to continue to produce income.

Wedoff, *supra*, at 262–63 (footnote omitted). *See also* Henry J. Sommer, *Trying to Make Sense Out of Nonsense; Representing Consumers under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005*, 79 Am. Bankr.L.J. 191, 199–200 (Spring 2005) ("The Other Necessary Expense category presents still other issues. As discussed previously, it is a nonexclusive list.... Debtors may have a variety of other expenses that are necessary to [the] production of income, such as business expenses.... The rigidity of the means test can be softened somewhat by sensible exercise of judicial discretion with respect to such expenses." (footnotes omitted)).

Under the flexible, nonexclusive interpretation of § 707(b)(2)(A)(ii)(I) proposed by these authorities, self-employed Chapter 7 debtors completing the means test will not be prohibited from deducting their business expenses from their current monthly income merely because the expenses do not fall within one of the Other Necessary Expense categories specified in the IRM. In other contexts, however, some

---

**15.** Form 22A is available on the website of the Administrative Office of the U.S. Courts, at http://www.uscourts.gov/uscourts/RulesAnd Policies/rules/BK_Forms_Current/B_22A.pdf.

courts have held that the Other Necessary Expenses categories are exclusive for purposes of the means test. *See Egebjerg v. Anderson (In re Egebjerg)*, 574 F.3d 1045, 1051 (9th Cir.2009) ("The IRM list of categories appears to be nonexhaustive.... However, some bankruptcy courts have held that this list *is* exhaustive for purposes of the bright-line means test, because, by the plain language of § 707(b)(2)(A)(ii)(I), Congress expressly limited a debtor's deductions for other expenses to *'the categories specified'* by the Internal Revenue Service.... Other courts have looked beyond the enumerated categories and considered the applicability of IRM § 5.15.1.10(1)'s 'necessary expense test' on a case-by-case basis.... We need not resolve this debate in this case, however, because we conclude that under either interpretation, Egebjerg's repayment of his 401(k) loan does not qualify as an 'Other Necessary Expense.'" (citations omitted)). Under the interpretation of § 707(b)(2)(A)(ii)(I) that views the IRM categories as exclusive for purposes of the means tests, interpreting § 707(b)(2)(A)(ii)(I) in a more flexible manner arguably is akin to adding a missing piece to a defective Rubik's Cube. Considered alone, then, § 707(b)(2)(A)(ii)(I) could be interpreted as lending some support to the Debtors' net-income method of calculating current monthly income. But the inquiry does not end with that section.

## C. Current Monthly Income and § 1325(b)(2)

 It is only in the broader context provided by § 1325(b)(2) that it becomes clear that business expenses may not be deducted when calculating current monthly income. In pertinent part, § 1325(b)(2) states:

(2) For purposes of this subsection, the term "disposable income" means *current monthly income* received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended—

. . . .

(B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

11 U.S.C. § 1325(b)(2) (emphasis added). Under this provision, with the exception of certain payments not at issue in the Debtors' cases, current monthly income is the starting point for calculating a debtor's disposable income. It is from this starting point that one then subtracts certain amounts, including, if the debtor is engaged in business, "amounts reasonably necessary to be expended ... for the payment of expenditures necessary for the continuation, preservation, and operation of such business." *Id.* The resulting amount is the debtor's disposable income. Under § 1325(b)(1), unless the value of property to be distributed to unsecured claimants is not less than the amount of their claims, in order to be confirmed over the objection of the Trustee or an unsecured claimant a plan must provide "that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan." 11 U.S.C. § 1325(b)(1).[16]

---

**16.** Certain of the Debtors argue that "[i]f we truly are to interpret the means test in a

manner established by the Supreme Court in [*Hamilton v. Lanning*, —— U.S. ——, 130 S.Ct.

With this statutory framework in mind, the Court assumes for the sake of argument that it is permissible for Chapter 13 debtors to deduct business expenses when calculating their current monthly income. This assumption leads to a problem: Either § 1325(b)(2)(B) permits a double deduction of business expenses or, if not, it is rendered surplusage. After deducting business expenses for the purpose of calculating current monthly income, debtors would then calculate their disposable income by, among other things, deducting amounts "reasonably necessary to be expended ... if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business." 11 U.S.C. § 1325(b)(2)(B). That is, there would be a double deduction of business expenses.

▬▬▬ Form 22C's answer to this problem is to direct Chapter 13 debtors to "not include any part of the business expenses entered on Line [3]b as a deduction in Part IV," the part of Form 22C in which debtors list the deductions from income they are to make in determining their disposable income. But given the choice between deducting business expenses on Line 3(b) based on a definition of current monthly income that is ambiguous in and of itself, or deducting business expenses from current monthly income based on the plain language of § 1325(b)(2)(B), the latter approach is the one the Court must follow. *See Wiegand,* 386 B.R. at 242 ("In contrast to the statutory definition of current monthly income, § 1325(b)(2) is plain and unambiguous with specific reference to

deductions for business expenses.... We can conclude from the statutory language that the specificity of § 1325(b)(2)(B) controls—business deductions are to be taken from a debtor's current monthly income to arrive at the debtor's disposable income."); *In re Sharp,* 394 B.R. 207, 216 (Bankr. C.D.Ill.2008) ("[T]o construe 'current monthly income' as allowing the deduction of business expenses as part of the initial calculation would require this Court to disregard the plain language of § 1325(b)(2)(B), which clearly makes business expenses a deduction to be taken after current monthly income has been calculated."). *See also* Sommer, 79 Am. Bankr.L.J. at 194 ("The definition [of current monthly income] appears to include a sole proprietor's gross income, especially since amended § 1325(b) provides for business expenses to be deducted from the debtor's current monthly income for debtors with a current monthly income below the applicable state median income.") (footnotes omitted). In fact, the Court cannot disregard the plain statutory language set forth in § 1325(b)(2)(B). *See Lamie v. United States Trustee,* 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004) ("It is well-established that when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." (internal quotation marks omitted)); *Chase Manhattan Mortg. Corp. v. Shapiro (In re Lee),* 530 F.3d 458, 470 (6th Cir.2008) ("The common theme in the Supreme Court's bankruptcy jurisprudence over the past two decades is that courts

2464, 177 L.Ed.2d 23 (2010)] and espoused by Judge Cole in *Baud,* i.e. 'to reflect a debtor's ability to afford repayment', then the trustee's expansive view of equating 'cash flow' to 'income' fails to accomplish that directive." Doc. 20 in Case No. 12–52555 at 4. To the contrary, although the gross-receipts

method of calculating current monthly income will require some debtors to pay their projected disposable income for five years rather than three, it will never require debtors to pay more than their projected disposable income in any given year.

must apply the plain meaning of the Code unless its literal application would produce a result demonstrably at odds with the intent of Congress.").[17]

 If, on the other hand, the net-income method of calculating current monthly income is correct and § 1325(b)(2)(B) is interpreted as not permitting a double deduction, then § 1325(b)(2)(B) would be rendered surplusage. *See Wiegand,* 386 B.R. at 242 ("Statutes should also not be construed in a manner which robs specific provisions of independent effect. Interpretations that would render a statutory provision surplusage or a nullity should be rejected. If business expenses are deducted from gross receipts to determine a chapter 13 debtor's current monthly income, then there would be no need for § 1325(b)(2)(B), which provides for the same deductions.") (citations and internal quotation marks omitted); *In re Galley,* 2011 Bankr.LEXIS 1484, at *4 (Bankr.N.D.Ohio Apr. 20, 2011) (holding that " 'current monthly income' must encompass gross income because if it referred to net income, the need to deduct business expenses is redundant"); *In re Bembenek,* 2008 WL 2704289, at *2 (Bankr.E.D.Wis. July 2, 2008) ("[T]o allow a business expense deduction in Part I would render § 1325(b)(2)'s deduction for those same expenses 'superfluous,' since the deduction is then made twice."). And the Supreme Court has described as a "cardinal principle of statutory construction" the rule that courts must "give effect, if possible, to every clause and word of a statute" and that "a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word

shall be superfluous, void, or insignificant." *Duncan v. Walker,* 533 U.S. 167, 174, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001) (citations and internal quotation marks omitted). *See also Benson v. O'Brian,* 179 F.3d 1014, 1017 (6th Cir.1999) ("We should, of course, be 'hesitant to adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law.' " (quoting *Mackey v. Lanier Collection Agency & Serv., Inc.,* 486 U.S. 825, 837, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988))).

 It is true that "[s]urplusage does not always produce ambiguity and [the Supreme Court's] preference for avoiding surplusage constructions is not absolute." *Lamie,* 540 U.S. at 536, 124 S.Ct. 1023. And "the presumption against surplusage does not apply to doublets— two ways of saying the same thing that reinforce its meaning." *Doe v. Boland,* 698 F.3d 877, 881 (6th Cir.2012). "The U.S.Code is replete with meaning-reinforcing redundancies.... 'Sometimes drafters *do* repeat themselves and *do* include words that add nothing of substance, either out of a flawed sense of style or to engage in the ill-conceived but lamentably common belt-and-suspenders approach.' " *Id.* (quoting Antonin Scalia & Bryan A. Garner, *Reading Law* 176–77 (2012)). Along these lines, it has been argued that "[i]n the pre-BAPCPA statutory scheme, section 1325(b)(2)(B) was serving a useful function of clarifying that Chapter 13 debtors could deduct business expenses in determining the disposable income necessary to devote to a Chapter 13 plan" and that "although perhaps the deduction of busi-

---

**17.** As explained below, construing current monthly income for self-employed debtors to include gross receipts would not produce an absurd result or one demonstrably at odds with the intent of Congress. Furthermore, although the sections of the Bankruptcy Code relevant to the issue before the Court are inelegantly drafted, that alone "does not provide a sufficient reason to reject an otherwise correct interpretation of the [Bankruptcy] Code." *Baud,* 634 F.3d at 339–40.

ness expenses was implicit in the term 'income,' a statutory provision that made it clear that Chapter 13 could be useful to business owners was not a waste of space." Lawless, *supra*, at 6. But that is not how the pre-BAPCPA version of § 1325(b)(2) was interpreted. *See Wiegand*, 386 B.R. at 242 ("[A]lthough § 1325(b)(2) was amended under BAPCPA, subsection (B) remained unchanged. Under prior law, business expenses were deducted from 'income received by the debtor' to determine disposable income. Under BAPCPA, the phrase current monthly income was introduced into § 1325(b)(2), but the reduction of business expenses remained intact. We presume that business expense deductions under § 1325(b)(2)(B) continue to be a factor in arriving at a debtor's disposable income under BAPCPA."). For example, in the case of *In re Whitcomb*, 310 B.R. 428 (Bankr.W.D.Ark.2004), the bankruptcy court held that debtors who were self-employed, but who incurred no trade credit, were not debtors "engaged in business" within the meaning of § 1304(a) of the Bankruptcy Code.[18] Among other things, this meant that the debtors were not permitted to deduct business expenses from their income for the purposes of § 1325(b)(2): "Because the Court finds that the debtors are not debtors engaged in business, the money that the debtors have allocated for business expenses— $465.00 for the Whitcombs and $2325.00 for the Forrests—should be included in their monthly disposable income." *Id.* at 432. There was no dispute in *Whitcomb* that the debtors were self-employed or that they had income from the operation of their businesses. At the time, prior to BAPCPA, § 1325(b)(2)(B) read that " 'disposable income' means *income* which is received by the debtor and which is not

reasonably necessary to be expended ... if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business." 11 U.S.C. § 1325(b)(2)(B) (2004) (emphasis added). Thus, if the meaning of the word "income" standing alone as used in the pre-BAPCPA version of § 1325(b)(2) meant "net income," the *Whitcomb* court would have had no basis to require the debtors to pay their gross business receipts as part of their monthly disposable income. It appears, therefore, that the word "income" by itself as used in § 1325(b)(2)(B) prior to BAPCPA was interpreted by courts to mean gross receipts. Although BAPCPA amended § 1325(b)(2) and added § 101(10A), there is nothing in either of those sections that reflects a Congressional intention that the meaning of "income" standing alone, as it was previously used in § 1325(b)(2), should change.

If debtors are prohibited from deducting business expenses when calculating their current monthly income, it has been argued, then they cannot deduct them at all. *See* Redmiles & Salahuddin, *supra*, at 56; Lawless, *supra*, at 7 ("[Section 1325(b)(3) ] ... seems to direct that above-median-income debtors do not get to deduct business expenses under section 1325(b)(2)(B). Above-median-income debtors must use the section 707(b)(2) means test calculations except to deduct charitable contributions as allowed by section 1325(b)(2)(A)(ii). Coming back to the 707(b)(2) means test in Chapter 7, we saw that it did not clearly allow for the deduction of business expenses." (footnotes omitted)); Drake, Bonapfel & Goodman, *supra*, § 9F:35 ("[Section] 1325(b)(2)(B) authorizes the deduction of business expenses for a below-median debtor, but it does not

**18.** "A debtor that is self-employed and incurs trade credit in the production of income from such employment is engaged in business." 11 U.S.C. § 1304(a).

apply to an above-median debtor."). Indeed, § 1325(b)(3) provides that, if the debtor's annualized current monthly income is greater than the applicable median family income, then "[a]mounts reasonably necessary to be expended under paragraph (2) ... shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2)." 11 U.S.C. § 1325(b)(3). Under this provision, when calculating the disposable income of above-median-income debtors under § 1325(b)(2), "§ 1325(b)(3) requires courts to determine the amounts reasonably necessary to be expended in accordance with the 'means test,' *i.e.*, the statutory formula for determining whether a presumption of abuse arises in Chapter 7 cases." *Baud*, 634 F.3d at 333.[19] If the means test did not permit the deduction of business expenses, then above-median income debtors could not—or so the argument goes—deduct business expenses when determining their disposable income. Yet § 1325(b)(2)(B) unambiguously provides for a deduction of reasonably necessary business expenses if the debtor is engaged in business. It would make no sense to interpret 1325(b)(3) to take away what § 1325(b)(2)(B) so plainly gives. Because amounts reasonably necessary to be expended by above-median-income debtors are to be determined in accordance with the means test, § 1325(b) also counsels in favor of an interpretation of the means test that would allow for the deduction of business expenses.

For all these reasons, § 1325(b)(2) plainly demonstrates that self-employed debtors must include their gross business receipts in the calculation of their current monthly income.[20] And because "identical words and phrases within the same statute should normally be given the same meaning[,]" *Powerex*, 551 U.S. at 232, 127 S.Ct. 2411, the meaning of current monthly income for the purpose of determining a debtor's applicable commitment period under § 1325(b)(4) must be the same as in § 1325(b)(2).

## D. Absurd and Arbitrary Results

 It is well established that even though a statute is "awkward" and "ungrammatical," if the language of the statutory provision is plain, "the sole function of the courts—*at least where the disposition required by the text is not absurd*—is to enforce it according to its terms." *Lamie*, 540 U.S. at 534, 124 S.Ct. 1023 (emphasis added) (internal quotation marks omitted).

The Debtors argue that the absurdity exception to the plain meaning rule applies here. In support of their position, the Debtors rely in part on *Roman*, 2011 WL 5593143, in which the bankruptcy court overruled a Chapter 13 trustee's objection to a self-employed debtor's plan based on his deduction of business expenses when calculating current monthly income. The court found that "the use of gross receipts for self-employed debtors would lead to distinctions in the calculation of current monthly income based on the business form under which the debtor has chosen to operate, resulting in prejudicial treatment to business proprietors[,]" and that the

---

**19.** The only exception is for qualifying charitable deductions. *Id.*

**20.** The majority of the courts addressing this issue have likewise concluded that Form 22C's approach is inconsistent with the Bankruptcy Code. *See Wiegand*, 386 B.R. at 242; *Galley*, 2011 Bankr.LEXIS 1484, at *5; *Compann*, 459 B.R. at 481; *Sharp*, 394 B.R. at 216; *Bembenek*, 2008 WL 2704289, at *2; *In re Arnold*, 376 B.R. 652, 654 (Bankr. M.D.Tenn.2007). *But see Roman*, 2011 WL 5593143, at *2–4; *In re Romero*, 2013 WL 241742, at *2 (Bankr.S.D.Fla. Jan. 22, 2013) ("This Court finds *Roman* is directly on point and most persuasive, and adopts the court's reasoning therein.").

trustee's interpretation would "artificially inflate" a debtor's current monthly income, "thereby forcing a longer commitment period...." *Id.* at *4. The Debtors assert that the gross-receipts method of calculating current monthly income fails to recognize the economic realities of the self-employed and leads to absurd results. They illustrate their point with this hypothetical situation: Under the gross-receipts method, a husband and wife who are proprietors of a mom-and-pop grocery store with $25,000 in monthly gross receipts, and who have $2,000 left each month after payment of business expenses of $23,000, would have an applicable commitment period of five years, because without deduction of the business expenses for purposes of calculating current monthly income, their income and family size would place them in the category of above-median-income debtors. If, however, they were salaried or hourly employees of a grocery store, or if they received their income from their own grocery store through a corporation, limited liability company or Subchapter S corporation and had take-home pay or a distribution from the business in the identical amount of $2,000 a month, they would have an applicable commitment period of only three years, because their income would place them in the category of below-median-income debtors. That discrepancy in treatment, the Debtors argue, cannot be what Congress intended and would lead to absurd results. *See* Doc. 20 in Case No. 12–52555 at 6–7. *See also* Redmiles & Salahuddin, *supra,* at 57.

Indeed, subject to certain debt limits, "the Bankruptcy Reform Act of 1978 extended Chapter 13 eligibility to [the] self-employed because '[t]he distinction between a barber [or] grocer ... who is self-employed from one who is an employee is slight. H.R. 8200 eliminates the distinction, in order to afford small sole proprietors as well as wage earners an alternative to Chapter 11.'" *Comprehensive Accounting Corp. v. Pearson (In re Pearson),* 773 F.2d 751, 753 (6th Cir.1985) (quoting H.R.Rep. No. 595 at 119). But the fact that when it enacted BAPCPA "Congress may not have foreseen all of the consequences of [its] statutory enactment is not a sufficient reason for refusing to give effect to its plain meaning." *Union Bank v. Wolas,* 502 U.S. 151, 158, 112 S.Ct. 527, 116 L.Ed.2d 514 (1991). "A result ... is not absurd merely because it does not comport with one's notion of what constitutes good policy." *Chapman v. Higbee Co.,* 319 F.3d 825, 832 (6th Cir.2003) (en banc). And "if it is plausible that Congress intended the result compelled by the Plain Meaning Rule, we must reject an assertion that such an application is absurd." *RCI Tech. Corp. v. Sunterra Corp. (In re Sunterra Corp.),* 361 F.3d 257, 268 (4th Cir.2004). That is the case here. The *Weigand* court observed that the Bankruptcy Code is "replete with rules and requirements that impact sole proprietors differently than wage earners[,]" *Weigand,* 386 B.R. at 243, "[f]or example, an individual chapter 13 debtor in business may be expected to have more debt associated with his or her operation than someone who works for wages." *Id.* "That the 'profit' from the business does not exceed what another makes in salary does not relieve the sole proprietor from the debt limits for eligibility for chapter 13 relief" because "[i]t may be that Congress simply did not want those persons generating significant revenues through a business to have access to three-year chapter 13 plans." *Id.*

Further, Chapter 11 is often used by individuals who do not wish to liquidate their assets but who exceed the debt limits of Chapter 13. In Chapter 11, if an unsecured creditor objects to confirmation of a plan that does not propose to pay the

creditor the amount of its claim, then the debtor must distribute property of a value that is not less than the "projected disposable income of the debtor (as defined in section 1325(b)(2)) to be received during the 5–year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer." 11 U.S.C. § 1129(a)(15). This suggests that Congress did not consider it absurd to impose a five-year repayment requirement on individual debtors who are seeking to rehabilitate. Despite the Debtors' arguments to the contrary, the gross-receipts method of calculating current monthly income will not "lead to patently absurd consequences, that Congress could not possibly have intended[.]" *Pub. Citizen,* 491 U.S. at 470, 109 S.Ct. 2558 (1989) (Kennedy, J., concurring) (citation and internal quotation marks omitted).

■ In addition, a seemingly unfair or arbitrary result does not provide a basis for ignoring plain statutory language. *See Lamie,* 540 U.S. at 538, 542, 124 S.Ct. 1023 ("Our unwillingness to soften the import of Congress' chosen words even if we believe the words lead to a harsh outcome is long-standing. . . . If Congress enacted into law

something different from what it intended, then it should amend the statute to conform it to its intent. It is beyond our province to rescue Congress from its drafting errors, and to provide for what we might think . . . is the preferred result." (internal quotation marks omitted)); *Sigmon Coal Co. v. Apfel,* 226 F.3d 291, 308 (4th Cir.2000), *aff'd sub nom. Barnhart v. Sigmon Coal Co.,* 534 U.S. 438, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002) ("[E]ven if . . . the literal text of the statute produces a result that is, arguably, somewhat anomalous—we are not simply free to ignore unambiguous language because we can imagine a preferable version. . . . [O]ur job is to determine the meaning of the statute passed by Congress, not whether wisdom or logic suggests that Congress could have done better. . . ."). Indeed, "[a]s can be attested by anyone who has ever struggled with . . . artifacts of the modern administrative state . . . we live in a world that abounds with arbitrary distinctions." *Lane v. W. Interstate Bancorp (In re Lane),* 280 F.3d 663, 669 (6th Cir.2002). "Absent a challenge on constitutional grounds—and none has been asserted here—this court holds no warrant to cleanse the United States Code of arbitrary distinctions." *Id.*[21] In *Lane* itself,

---

**21.** Certain of the Debtors allude to an "equal protection" argument, but do not discuss any authority supporting it or attempt to develop the argument. *See* Doc. 20 in Case No. 12–52555 at 6 ("Besides the obvious equal protection problems, the *Wiegand* position unnecessarily places the mom and pop grocery store operators at an immediate disadvantage."); Doc. 25 in Case No. 12–53893 at 6 (same). "While the United States Court of Appeals for the First Circuit recently reminded attorneys that [i]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones," *DeGiacomo v. CitiMortgage, Inc. (In re Nistad),* 2012 WL 272750, at *4 n. 40 (Bankr.D.Mass. Jan. 30, 2012) (internal quotation marks omitted),

"perhaps the United States Court of Appeals for the Seventh Circuit said it best: '[j]udges are not like pigs, hunting for truffles buried in briefs.' " *Id.* (quoting *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir.1991)). In any event, any equal protection argument that the Debtors attempted to develop would likely fail. *See Storer v. French (In re Storer),* 58 F.3d 1125, 1129 (6th Cir.1995) ("[B]ankruptcy legislation is in the area of economics and social welfare. This being so, the applicable standard, in measuring the propriety of Congress' classification, is that of rational justification. Applying this deferential standard, we conclude that Bankruptcy Code § 522(b)(1) does not violate equal protection.") (citation and internal quotation marks omitted). *Cf. Stewart v. United States Trustee (In re Stewart),* 175 F.3d 796, 812 (10th Cir.

the Sixth Circuit held that it is impermissible for a Chapter 13 plan to modify the rights of a holder of a claim secured only by a security interest in real property that is the debtor's principal residence if the "claimant's lien on the debtor's homestead has a positive value, no matter how small[,]" *id.* at 669, (i.e., even less than one dollar) while modification is permissible if—as could result from a downward adjustment in the valuation of the collateral of less than one dollar—the lien "has no value at all[,]" a distinction the Sixth Circuit recognized "may seem arbitrary." *Id.*

In fact, if it were permissible to interpret a provision of the Bankruptcy Code as not being what Congress intended merely because it potentially operates in an arbitrary fashion, the Bankruptcy Code would provide many other opportunities to exercise that discretion. *See Waters v. Money Store (In re Waters),* 276 B.R. 879, 887 (Bankr.N.D.Ill.2002) ("[B]right-line distinctions exist everywhere in the law generally and in the ... Bankruptcy Code[ ] in particular, and they almost always appear arbitrary and unfair at the margins."). For example, even prior to BAPCPA, individuals who wished to reorganize rather than liquidate their assets and who found themselves a mere one dollar over the debt limits for eligibility to file a Chapter 13 case set forth in § 109(e) of the Bankruptcy Code would need to file a Chapter 11 case, which is more complex, costly and time-consuming. *See Pearson,* 773 F.2d at 753 ("Generally, Chapter 13 is simpler, speedier, and less expensive than Chapter 11. Congress desired to give small sole proprietors the benefit of Chapter 13, but also established dollar limits to prevent larger businesses from taking advantage of the provisions."). Yet courts have held that "[a]lthough Congress intended qualifying business and consumer debtors to reorganize under Chapter 13, the eligibility limits of § 109(e) should be strictly construed." *In re Rios,* 476 B.R. 685, 688 (Bankr.D.Mass.2012).

BAPCPA has only added to the arbitrary lines drawn in the Bankruptcy Code. For example, if the means test shows that a debtor has the ability to pay unsecured creditors only one dollar less than the threshold set forth in § 707(b)(2)(A)(i), the debtor will not be subject to a presumption of abuse, while a debtor who is at or even one dollar above the threshold will be subject to the presumption. And then there is the seemingly arbitrary distinction made for all Chapter 13 debtors, regardless of whether they are self-employed: If the annualized current monthly income of the debtor and the debtor's spouse combined is one dollar *below* the relevant median family income, the applicable commitment period is three years while if the annualized current monthly income of the debtor and the debtor's spouse combined is equal to or *above* the relevant median family

1999) ("We review § 707(b) and its distinction between consumer and business debtors under a 'rational basis' analysis. This is because the distinction between consumer and business debtors does not implicate a fundamental right or affect a suspect classification.... A classification involving neither a fundamental right nor a proceeding along suspect lines is accorded a strong presumption of validity. A statute is presumed constitutional ... and [t]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it.... An economic classification such as that applied in § 707(b) does not fail rational basis review merely because in practice it results in some inequality." (citations and internal quotation marks omitted)). As explained in *Wiegand* and above, among other possible rationale bases, Congress conceivably could have intended that sole proprietors in Chapter 13 be subject to five-year applicable commitment periods because they often will have more debt than other consumer debtors.

income, the applicable commitment period is five years. There are a number of other arbitrary distinctions made by BAPCPA. *See* Wedoff, *supra*, at 249 (discussing the "potential arbitrariness of six-month averaging" under § 101(10A)); *id.* at 281 ("[T]he means test, which the sponsors [of BAPCPA] saw as the principal method for effectuating their intent, probably will not do so. Its definition of income is complicated and arbitrary, unlikely to provide a good measure of a debtor's actual ability to pay debts, but likely to generate uncertainty and litigation. Its allowed deductions from income, using the IRS's Collection Financial Standards only in part, are similarly complex and arbitrary...."); *id.* at 275 ("The most striking feature of the deduction for secured debt is how, in combination with the IRS National and Local Standards, it discriminates against debtors who rent rather than own their property. Debtors whose financial situation is in every other respect the same will be treated very differently under the means test depending on this variable. Those who rent their living space and lease their automobiles have allowances for housing and transportation strictly limited by the IRS Local Standards, but those who have mortgages and auto loans are allowed whatever the monthly cost of their homes and vehicles may be, as long as they are encumbered by substantial secured debt.").

### E. Conflict Between Form 22C and the Bankruptcy Code

In sum, an official form and the Bankruptcy Code are in conflict. When that is the case, the Bankruptcy Code controls the outcome. *See Harman v. Fink (In re Harman)*, 435 B.R. 596, 599 (8th Cir. BAP 2010) ("The applicable form in this case is the B22C form. However, it is ultimately the statute, not the form, which determines the applicable commitment period. The official forms 'shall be construed to be consistent with [the Federal Rules of Bankruptcy Procedure] and the Code.' Fed. R. Bankr.P. 9009."); *Arnold*, 376 B.R. at 653 ("This Chapter 13 case should be titled *'The Bankruptcy Code v. The Official Bankruptcy Forms.'* The title portends the answer, because as we all know, the Bankruptcy Code always wins."). *Cf. In re Stoecker*, 179 F.3d 546, 552 (7th Cir.1999) ("[I]n a conflict between the Code and the rules, the Code controls...."); *Morse v. Perrotta (In re Perrotta)*, 406 B.R. 1, 8 (Bankr.D.N.H.2009) ("[T]o the extent that the Bankruptcy Rules and the Bankruptcy Code are inconsistent, the statute controls.").

### V. Conclusion

For the reasons set forth above, the Bankruptcy Code requires the Debtors to include their gross business receipts in the calculation of their current monthly income. They concede that, if they do so, their annualized current monthly income will be above the relevant median family income. Accordingly, the Debtors have applicable commitment periods of five years. The Trustee has objected to confirmation because the Debtors have proposed plans with applicable commitment periods of three years. The Objections, therefore, are **SUSTAINED**. The Debtors shall have 30 days within which to file modified plans in compliance with this Order.

**IT IS SO ORDERED.**