### In re Nicholas James KUWIK, and Tatjana Krause, Debtors.

### No. 13–77137–JRS.

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Signed May 23, 2014.

Filed May 28, 2014.

Shannon D. McDuffie, Law Office of Shannon D. McDuffie, P.C., Decatur, GA, for Debtors.

## ORDER

JAMES R. SACCA, Bankruptcy Judge.

Although Congress has defined "current monthly income" in 11 U.S.C. § 101(10A) simply as "average monthly income" with a few modifications, this definition begs the

question: What is income? As simple as this question may sound, answering it can be complicated when dealing with a self-employed debtor. For a wage-earner, income is ordinarily easily determined by reference to pay stubs. But for the self-employed, income could refer to gross income before expenses, or it could refer to net income after business expenses.

For purposes of this case, the Debtors' "currently monthly income" is relevant to determining the applicable commitment period over which they must make payments under a Chapter 13 plan pursuant to 11 U.S.C. § 1325(b)(4). But Congress did not define the word "income," so the Court must endeavor to discover what Congress meant income to be in the context of "current monthly income" as defined in § 101(10A) and as used in § 1325(b) of the Bankruptcy Code. If "income" in § 101(10A) refers to the self-employed debtor-husband's gross income before business expenses, then the Debtors' minimum period for making plan payments is five years; if "income" refers to net income after business expenses, then the Debtors may only have to make payments for three years.

### Background

The Debtors, Nicholas James Kuwik (the "Husband") and Tatjana Krause (the "Wife") filed a petition for protection under Chapter 13 of the Bankruptcy Code on December 18, 2013. The Schedule I attached to their petition indicates that the Wife is employed as a case evaluator for a mental health center and that the Husband is self-employed in the media production field.[1]

Along with their petition, the Debtors filed a Chapter 13 Plan [Doc. 2] that proposed to pay $350.00 monthly for 3 years to the Chapter 13 Trustee (the "Trustee") for the benefit of the Debtors' creditors. Under that plan, the Debtors proposed to pay $217.22 to unsecured creditors, which is less than 1% of the amount owed to them.[2]

Also, the Debtors filed Scheduled I & J and Form 22C,[3] all of which relate to the Debtors' income and expenses. The Debtors amended these forms several times. The most recently amended Schedule I [Doc. 30] indicates that the Wife earns gross wages, salary, and commissions of $695.00 monthly, minus $422.12 in payroll deductions, leaving $272.88 in monthly take-home pay. This schedule also shows that the Husband earns gross wages, salary, and commissions of $3,146.71 monthly, with payroll deductions of $904.69, leaving a monthly take-home pay of $2,242.02, and it shows that he has "net income from ... operating a business" of $1,325.45.

The amended Form 22C [Doc. 30] reports the Wife's income as $450.00 monthly and shows the same numbers for the Husband as reflected on the amended Schedule I. In addition, the Husband's "business income" is calculated by taking $4,407.28 in "gross receipts" and subtracting $3,081.83 of "ordinary and necessary business expenses," leaving $1,325.45 in business income. Using these numbers, the Debtors calculated their annual income at $59,065.90, which is less than the median

---

1. It appears that the Husband secured employment income in addition to his self-employment income about three or four months before filing for bankruptcy.

2. The Debtors later amended their plan to provide for payments of $390.00, among a few other changes. [Doc. 26]. The amount proposed to pay unsecured creditors remained unchanged.

3. Official Form 22C is Titled "Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income."

income for a family of four in Georgia,[4] which is $68,085.00. According to these calculations, the Debtors have indicated that their applicable commitment period for making payments under their Chapter 13 plan is three years. If their income is instead determined to be above the household median, the Debtors' applicable commitment period would instead be five years.

On February 25, 2014, the Trustee filed an Objection to Confirmation of Plan & Motion to Dismiss Case [Doc. 21] because, among other reasons, the Husband had not produced evidence of his monthly self-employment income, did not include an itemization of his business expenses, and according to the Trustee, should not have deducted business expenses at all when calculating his current monthly income; therefore the Trustee argues that the plan does not provide for the correct applicable commitment period.

The Court held a plan confirmation hearing on April 3, 2014. At the hearing, the Debtors disagreed with the Trustee and argued that their currently monthly income should be determined after deducting business expenses, not before. The Court took the issue under advisement, continued the confirmation hearing, and gave the parties an opportunity to file briefs.

The Debtors filed a brief in support of their position [Doc. 32] and the Trustee filed a brief in support of his objection [Doc. 36]. The Trustee also filed another supplemental objection to confirmation [Doc. 37], asserting that the Debtors had failed to file any proof of monthly business expenses. The Court entered an Order dated April 30, 2014, giving the Debtors one week to file a list of business expenses by type and amount. [Doc. 38]. The Debtors filed this list the next day. [Doc. 39]. The Court has reviewed all matters of record, and this matter is ripe for adjudication.

### The Applicable Commitment Period and Current Monthly Income

Section 1325(a) of the Bankruptcy Code provides that a court must confirm a Chapter 13 plan if certain conditions are met. 11 U.S.C. § 1325(a). However, if an unsecured creditor or the Chapter 13 Trustee objects to plan confirmation, a court may not confirm the plan unless "the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period" will be paid to unsecured creditors, unless creditors are to be paid in full. 11 U.S.C. § 1325(b)(1). Thus if a proper objection is made, a court must consider whether all of the debtor's projected disposable income is committed to plan payments and whether the plan proposes for these payments to be made over the appropriate applicable commitment period.

A debtor's projected disposable income is defined in Section 1325(b)(2) as "current monthly income received by the debtor ... less amounts reasonably necessary to be expended" on three categories of expenses: (1) maintenance and support of the debtor and dependents, (2) necessary business expenses and (3) certain charitable expenses. 11 U.S.C. § 1325(b)(2). But for debtors whose current monthly income is higher than the median family income for a similarly-sized family in the same state—according to figures from the U.S. Census Bureau—§ 1325(b)(3) mandates that the "amounts reasonably necessary to be expended" in the first two of these categories must be determined by reference to 11 U.S.C. § 707(b)(2), which contains the

---

4. The Debtors have two children.

standards for the so-called "means test." 11 U.S.C. § 1325(b)(3).

█ As for the applicable commitment period, Section 1325(b)(4) defines it as three years if the debtor's current monthly income is below-median and five years if the debtor's current monthly income is above-median. 11 U.S.C. § 1325(b)(4). The applicable commitment period "is a temporal term that prescribes the minimum duration of a debtor's Chapter 13 bankruptcy plan." *Whaley v. Tennyson (In re Tennyson)*, 611 F.3d 873, 880 (11th Cir.2010).

In order to determine a debtor's applicable commitment period (and calculate projected disposable income), one must begin with the debtor's "current monthly income." Congress defined current monthly income in § 101(10A) as "average monthly income from all sources that the debtor receives ... without regard to whether such income is taxable income." 11 U.S.C. § 101(10A). But Congress did not define what exactly it meant by "income" in this context.

In business parlance, "gross income" generally refers to income before business expenses are deducted, and "net income" refers to income after expenses, but the word "income" standing alone is ambiguous. Congress used the term "net income" in several sections of the Bankruptcy Code—including § 521(a)(1)(B)(v) and § 1205(b)(3)—and it used the term "gross income" in several other sections—including § 101(18)(A), § 101(19A)(A)(ii), § 101(20), § 101(51 B), § 346(j)(2), § 1114(m), and § 1325(b)(2)(A)(ii). *In re Harkins*, 491 B.R. 518, 530 (Bankr. S.D.Ohio 2013). But Congress chose to use neither of these terms in § 101(10A) and simply used the term "income." This ambiguity has led to a split of authority in cases where a debtor is self-employed, al-though the majority of cases hold that current monthly income refers to a debtor's gross income before deducting business expenses.

## The Gross Receipts Approach

█ The concepts of "current monthly income" and an "applicable commitment period" did not exist in the Bankruptcy Code before Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA) of 2005, Pub.L. 109–8, 119 Stat. 23 (enacted April 20, 2005). One of the primary goals of BAPCPA was to ensure that debtors "repay creditors the maximum they can afford." *Ransom v. FIA Card Servs., N.A.,* 562 U.S. 61, 131 S.Ct. 716, 725, 178 L.Ed.2d 603 (2011) (citing legislative history). To that end, Congress differentiated between debtors with above-median income and those with below-median income.

Before Congress enacted BAPCPA, all debtors were treated the same under Chapter 13 regardless of income level. At that time, § 1325(b)(1) provided that a debtor must pay all projected disposable income to creditors for three years. BAPCPA changed this three-year duration to five years for above-median debtors by adding § 1325(b)(4) to the Bankruptcy Code (which defines the applicable commitment period). Congress also added § 1325(b)(3), which provides that above-median debtors must calculate their disposable income by reference to the allowable expense standards in the § 707(b)(2) "means test."

Section 1325(b)(2) (which defines disposable income) pre-dated BAPCPA and underwent only minor changes. The term "disposable income" was previously defined as "income which is received by the debtor and which is not reasonably necessary to be expended" on certain specified categories of expenses.[5] *Hamilton v.*

**5.** Before the enactment of BAPCPA, § 1325(b)(2) read as follows:

*Lanning*, 560 U.S. 505, 509, 130 S.Ct. 2464, 177 L.Ed.2d 23 (2010). One of these types of expenses to be subtracted from "income" was contained in § 1325(b)(2)(B): "if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business." 11 U.S.C. § 1325(b)(2)(B). This subsection, which permits the deduction of business expenses when calculating disposable income, survived BAPCPA completely intact.[6]

■ At least one court has observed that "the word 'income' by itself as used in § 1325(b)(2)(B) prior to BAPCPA was interpreted by courts to mean gross receipts." *In re Harkins*, 491 B.R. at 538. Clearly, Congress's understanding of "income" in the context of § 1325(b)(2) before BAPCPA must have meant gross income

before deducting business expenses; otherwise there would have been no need to provide for the subtraction of business expenses *from* income. And "Pre–BAPCPA bankruptcy practice is telling because [courts] will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure." *Hamilton*, 560 U.S. at 517, 130 S.Ct. 2464 (internal quotes and citations omitted).

After the enactment of BAPCPA, the term "income" in § 1325(b)(2) has been replaced by the term "current monthly income," which is now defined in § 101(10A). Congress kept the deduction for business expenses in § 1325(b)(2)(B) but made no mention of business expenses in its definition of current monthly income in § 101(10A).[7] Congress provided that

---

(2) For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended
(A) for the maintenance or support of the debtor or a dependent of the debtor, including charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to a qualified religious or charitable entity or organization (as that term is defined in section 548(d)(4)) in an amount not to exceed 15 percent of the gross income of the debtor for the year in which the contributions are made; and
(B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

6. Following the enactment of BAPCPA, § 1325(b)(2) now reads:
(2) For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended—

(A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and
(ii) for charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to a qualified religious or charitable entity or organization (as defined in section 548(d)(4)) in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made; and
(B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

7. Section 101(10A) reads as follows:
(10A) The term "current monthly income"—
(A) means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6–month period ending on—
(i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii); or

income is to be determined without regard to whether it is taxable and did allow for certain other exclusions from current monthly income—such as benefits received under the Social Security Act and certain other payments. *See* 11 U.S.C. § 101(10A). Congress could have moved the deduction for business expenses from § 1325(b)(2)(B) to § 101(10A), but it did not.

Therefore, many courts have concluded that Congress intended "income" for a sole proprietor to mean "gross receipts" before business expenses, as it did before BAPCPA. *See, e.g., Drummond v. Wiegand (In re Wiegand),* 386 B.R. 238, 239 (9th Cir. BAP 2008) (holding that "a chapter 13 debtor engaged in business may not deduct ordinary and necessary business expenses from gross receipts for the purpose of calculating current monthly income as defined under § 101(10A)" because "such deductions are authorized under § 1325(b)(2)(B) and, therefore, are to be subtracted from current monthly income when calculating disposable income pursuant to § 1325(b)(2)"); *In re Sharp,* 394 B.R. 207, 216 (Bankr.C.D.Ill.2008) ("§ 1325(b)(2)(B) is clear that business expenses are deductions from current monthly income—not part of the calculation of what current monthly income is."); *In re Harkins,* 491 B.R. at 539 ("§ 1325(b)(2) plainly demonstrates that self-employed debtors must include their gross business receipts in the calculation of their current monthly income.").

▮ These courts reason that if current monthly income were to be calculated net of business expenses, § 1325(b)(2) would either allow for a double deduction of business expenses—truly an absurd result—or § 1325(b)(2)(B) would be rendered mere surplusage. *E.g., In re Harkins,* 491 B.R. at 536. And the Supreme Court has stated that a "cardinal principle of statutory construction" is that courts must "give effect, if possible, to every clause and word of a statute" and that "a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *Id.* at 537 (quoting *Duncan v. Walker,* 533 U.S. 167, 174, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001) (citations and internal quotation marks omitted)). Moreover, to assume that Congress intended currently monthly income to be net of business expenses would ignore the fact that before BAPCPA, income was based on gross receipts before business expenses were deducted, and there is no evidence that Congress intended a departure from past practice.

### Criticisms of the Gross Receipts Approach

The Debtors argue that Congress could not possibly have intended for self-employed debtors to have their applicable commitment period determined without first subtracting their business expenses from their gross receipts, and several

(ii) the date on which current income is determined by the court for purposes of this title if the debtor does not file the schedule of current income required by section 521(a)(1)(B)(ii); and

(B) includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not other-

wise a dependent), but excludes benefits received under the Social Security Act, payments to victims of war crimes or crimes against humanity on account of their status as victims of such crimes, and payments to victims of international terrorism (as defined in section 2331 of title 18) or domestic terrorism (as defined in section 2331 of title 18) on account of their status as victims of such terrorism.

courts support their position.[8] *See, e.g., In re Roman,* 11–01415 BR, 2011 WL 5593143 (Bankr.D.P.R. Nov. 16, 2011) (holding that interpreting current monthly income as gross receipts before business expenses "would artificially inflate the current monthly income of [the debtor] by including as part of his income the business revenue that would in fact be consumed by business expenses, thereby forcing a longer applicable commitment period").[9]

Although it is true that the economic reality is that a self-employed debtor only has net income from which to pay his or her creditors, it does not necessarily follow that current monthly income must already have included a deduction for business expenses for purposes of determining the applicable commitment period. Debtors are not asked to pay their current monthly income into a plan, but rather only their disposable income. Current monthly income determines the term of the plan, while disposable income determines the monthly payment. No economic reality is frustrated by having a debtor fund a plan for five years instead of three.

It certainly could have made sense for Congress to intend to compute current monthly income net of business expenses, since a primary purpose of measuring current monthly income is to compare it to U.S. Census Bureau figures in order to determine whether a debtor is above or below median income, and the census figures deduct business expenses before calculating income. *In re Harkins,* 491 B.R. at 526. But Congress did provide other ways in which current monthly income as defined in § 101(10A) does not match up with the census figures. For example, § 101(10A) explicitly excludes "benefits received under the Social Security Act," but the Census Bureau includes social security income to calculate median family income. *Id.* at 526–27.

8. The understanding of income § 1325(b)(2) as gross receipts is certainly not without its critics, even among courts that have held this interpretation to be consistent with congressional intent. Another bankruptcy court in this district has pointed out that the "real income of a sole proprietor is the difference between gross revenue and expenses" and that the "calculation prescribed by the statute is neither practical, logical, nor consistent with common sense." *In re Compann,* 459 B.R. 478, 482 (Bankr.N.D.Ga.2010). But that same court pointed out that "[s]ome may argue that Congress' departure from standard accounting principles is so anomalous and arbitrary that, assuming it is an error, we should not apply the statute as written; however, the job of the judiciary is not to rewrite the law, but to apply it as written." *Id.* Similarly, another court has concluded that "the fact that when it enacted BAPCPA 'Congress may not have foreseen all of the consequences of [its] statutory enactment is not a sufficient reason for refusing to give effect to its plain meaning.'" *In re Harkins,* 491 B.R. at 540 (quoting *Union Bank v. Wolas,* 502 U.S. 151, 158, 112 S.Ct. 527, 116 L.Ed.2d 514 (1991)).

9. The *Roman* court also observed that "the use of gross receipts for self-employed debtors would lead to distinctions in the calculation of current monthly income based on the business form under which the debtor has chosen to operate, resulting in prejudicial treatment to sole proprietors." 2011 WL 5593143, at *4 (Bankr.D.P.R. Nov. 16, 2011). At least one court has relied on just such a distinction. *See In re Geiger,* 09–62433, 2010 WL 2756760 (Bankr.N.D.Ohio July 12, 2010) (holding that debtor's income for purposes of the § 707(b) means test should not be based on gross income from corporation because he only "received" net income or profit from corporation, not gross receipts). On the other hand, if a self-employed debtor were able to deduct, as business expenses, his car, transportation cost, cell phone, internet, among others things, in order to determine current monthly income, it could favor the self-employed debtor by reducing his income and pushing him below median, which would not seem to be fair to the non-self-employed debtor who has the same expenses but cannot deduct them as business expenses, even though they may be necessary for employment.

Moreover, this Court is aware that some people argue that § 1325(b)(3) nullifies the case for gross receipts being the starting point for determining current monthly income because this subsection provides that above-median debtors shall determine their expenses by reference to § 707(b)(2), which makes no specific mention of business expenses.[10] According to these critics of the gross receipts approach, Congress thus must have understood "income" as used in § 101(10A) to be income net of business expenses; otherwise Congress would have provided a specific deduction for business expenses in § 707(b)(2).

Pursuant to § 1325(b)(3), above-median debtors must calculate their expenses for disposable income purposes—with one exception[11]—purely by reference to § 707(b). Section 707(b) uses the term "current monthly income" multiple times, but makes no specific mention of business expenses. Although it does not specifically mention business expenses, § 707(b)(2)(A) mandates that, with a few exceptions, a debtor's expenses "shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service." 11 U.S.C. § 707(b)(2)(A)(ii).

The National and Local Standards and the Other Necessary Expenses (collectively, the "Applicable IRS Standards") referenced in this section are part of the IRS's Collection Financial Standards, which the IRS uses "to determine how much money a delinquent taxpayer can afford to pay the Government." *Ransom v. FIA Card Servs., N.A.,* 562 U.S. 61, 131 S.Ct. 716, 726, 178 L.Ed.2d 603 (2011).

The IRS's standards are laid out in its Financial Analysis Handbook (the "IRS Handbook"), available at http://www.irs.gov/irm/part5/irm_05-015-001.html. Critics of the gross receipts approach point out that neither the National Standards nor the Local Standards refer to business expenses, although the National Standards do include a "miscellaneous" category which does include "occupational expenses." IRS Handbook at § 5.15.1.8–9. Also, these critics argue that Congress did not understand Other Necessary Expenses to include business expenses, since Business Expenses are listed as a separate category in the IRS Handbook. *Id.* at § 5.15.1.17. Other Necessary Expenses, however, are defined in the IRS Handbook as those that "are necessary to provide for a taxpayer's and his or her family's health and welfare and/or *production of income,*" *Id.* at § 5.15.1.7 (emphasis added),[12] which

---

**10.** Section 1325(b)(3) provides that "[a]mounts reasonably necessary to be expended under paragraph (2) . . . shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor [has above-median income]." 11 § U.S.C. 1325(b)(3).

**11.** The one stated exception is that Congress specified in § 1325(b)(3) that above-median debtors may still deduct the charitable contributions defined in § 1325(b)(2)(A)(ii) without regard to the IRS Standards. Congress did not specifically exempt business expenses from this same treatment.

**12.** At least one court has opined that the reason that business expenses are categorized separately is that the IRS Handbook "is using the tax meaning of business income as net income" and "permits a taxpayer entity to reduce its income by deducting expenses paid to earn that income." *In re Harkins,* 491 B.R. at 533. The fact that the IRS may use a tax meaning of business income as net income for collection purposes, in other words for the purpose of determining disposable income from which a tax obligation can be paid, does not compel a conclusion that Congress intended current monthly income to mean net income for purposes of determining an applicable commitment period in a Chapter 13

would seem to be broad enough to include business expenses. Furthermore, in enacting BAPCPA, Congress understood the list of Other Necessary Expenses to be non-exclusive. *See* H.R.Rep. No. 109–31, at 100 n.66 (2005) ("The Internal Revenue Manual does not establish monetary amounts with regard to necessary expenses that it characterizes as 'Other Expenses.' Rather, it provides a *non-exclusive list* of these expenses....") (emphasis added). It seems to this Court that, to the extent it is even necessary for the Applicable IRS Standards to include business expenses for them to be deducted to calculate disposable income under § 1325(b)(2), the scope of Other Necessary Expenses is broad enough to include business expenses because they are necessary for the production of income.[13]

■ It also seems to this Court that it would violate the principles of statutory construction to interpret § 1325(b)(3) as providing that business expenses are not deductible for purposes of calculating projected disposable income, since § 1325(b)(2)(B) plainly provides that business expenses *are* deductible for that purpose. Statutes should be interpreted so

that they are internally consistent. *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365, 371, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988) (statutory construction is a "holistic endeavor"). Interpreting § 1325(b)(3) to eliminate the deduction in § 1325(b)(2)(B) would create an inconsistency within § 1325.

Congress clearly expressed its intent in § 1325(b)(2)(B) that business expenses are to be deducted from current monthly income when calculating disposable income. There simply is not a sufficient basis in the Code, legislative history, pre-amendment practice or the policies underlying BAPCPA to interpret § 1325(b)(3) to wipe out the express provision for the deduction of business expenses contained in § 1325(b)(2)(B).

Therefore, the only way § 1325(b) can be internally harmonized is by concluding that Congress intended for business expenses to be deductible for both below- and above-median debtors when calculating disposable income. Even assuming that the Applicable IRS Standards do not cover business expenses, does that really mean that Congress did not intend for

---

bankruptcy case. The amount of disposable income and the term of an applicable commitment period are two separate issues.

**13.** If Other Necessary Expenses is not broad enough to include business expenses, one would have to consider whether the "special circumstances" in § 707(b)(2)(B) would be broad enough to include them. Courts have permitted deductions for a wide variety of "special circumstances," including high commuting costs, increased price of gas, expenses for the business use of a car over and above normal use, costs of maintaining separate households necessitated by employment, security costs in a dangerous neighborhood and even the cost of diapers and infant formula. See *In re Batzkiel,* 349 B.R. 581 (Bankr. N.D.Iowa 2006); *In re Turner,* 376 B.R. 370 (Bankr.D.N.H.2007); *In re Scarafiotti,* 375

B.R. 618 (Bankr.D.Colo.2007); *In re Graham,* 363 B.R. 844 (Bankr.S.D.Ohio 2007); *In re Crego,* 387 B.R. 225 (Bankr.E.D.Wis.2008). A respected bankruptcy treatise even suggests that "special circumstances" could include "any legitimate expense that is out of the ordinary for an average family." 6 COLLIER ON BANKRUPTCY, 707.04[3][d] at 707–40 (16th Ed.) Because most courts would include business expenses under Other Necessary Expenses, most would not have to consider the issue of whether special circumstances would include business expenses. See Drake, et al., CHAPTER 13 PRACTICE AND PROCEDURE, Vol. 2, 9F:65 at p. 305 (2013 Ed.) ("If a debtor's travel expenses qualify as a business expense, she may be able to deduct the expense as an "Other Necessary Expense" rather than as a "special circumstance." ") (footnotes omitted).

them to be deducted from current monthly income in the face of the express provision for such a deduction in § 1325(b)(2)(B)? This Court thinks not.

Accordingly, the statutory construction arguments for interpreting current monthly income to mean net income after business expenses simply do not hold up. One of the problems with such an interpretation is that it would require the Court to either simply ignore § 1325(b)(2)(B) or face the absurdity that would result from a double deduction of business expenses. This the Court cannot do. The text of BAPCPA certainly has its problems, but trying to force an interpretation that current monthly income is net income seems to make it worse.

■ The Debtor suggests that it is an absurd result if a self-employed debtor is forced into a five-year applicable commitment period by interpreting income as gross receipts; but a result is not absurd merely because someone does not agree with it. An interpretation of a statute is absurd if it "plainly at variance with the policy of the legislation as a whole," *United States v. American Trucking Assns., Inc.*, 310 U.S. 534, 543, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940), "where it is quite impossible that Congress could have intended the result ... and where the alleged absurdity is so clear to be obvious to most anyone." *Public Citizen v. Department of Justice*, 491 U.S. 440, 470–471, 109 S.Ct. 2558, 105 L.Ed.2d 377 (1989) (Kennedy, J., concurring in judgment).

While it may be absurd to interpret the Code to prohibit a debtor from deducting business expenses in determining disposable income because the debtor would then be required to pay an amount that he or she does not have—which is impossible—it is not absurd to say that a person with an above-median gross income has to fund a Chapter 13 plan for five years instead of three, which is something he or she can clearly do. This Court cannot say that it is impossible that Congress intended such a result or that it is at variance with the central purpose of BAPCPA, which was to ensure that debtors repaid creditors the maximum they could afford. To effectuate that purpose, Congress created several bright-line tests under BAPCPA, including the two different applicable commitment periods under § 1325(b)(4). "Perhaps Congress chose to tolerate the occasional peculiarity that a brighter-line test produces." *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 131 S.Ct. 716, 729, 178 L.Ed.2d 603 (2011). As another possibility, one court has suggested that perhaps "Congress simply did not want those persons generating significant revenues through a business to have access to three-year chapter 13 plans." *In re Wiegand*, 386 B.R. 238, 243 (9th Cir. BAP 2008).

Another possible concern is that often there is considerable overlap between a sole proprietor's business and personal expenses: for example, vehicle(s), fuel, insurance, phone, computer, internet service, clothing, travel, meals, and use of a home office. Here, many of the expenses the Husband seeks to deduct fall into those categories. Accordingly, the Court discerns no compelling reason why the Debtors ought to be allowed to deduct these expenses from their current monthly income for purposes of determining their applicable commitment period under § 1325(b)(4).[14]

---

**14.** The Trustee does not dispute the Debtor's ability to deduct business expenses from current monthly income for purposes of calculating disposable income. Courts appear to agree that all debtors may deduct business expenses for purposes of evaluating the means test under § 707(b) and determining disposable income under § 1325(b). *See, e.g.,*

## Conclusion

This Court concludes that Congress intended "income" to mean "gross receipts" for purposes of calculating the current monthly income of a sole proprietor under § 101(10A) and determining the applicable commitment period under § 1325(b)(4). At the end of the day, a fair and reasonable reading of § 1325(b)(2) and (3) leads to the conclusion that reasonable and necessary business expenses are a permitted deduction for purposes of determining disposable income, but that Congress intended current monthly income to be a debtor's gross income before taking those expenses into account. As discussed above, "income" as used in pre-BAPCPA § 1325(b) referred to gross receipts before deducting business expenses, and there is no evidence that Congress intended to change the definition of income when enacting BAPCPA. Indeed, it could have provided for the deduction of business expenses in its definition of current monthly income in § 101(10A), but it did not, choosing instead to leave intact the deduction of business expenses *from* current monthly income in § 1325(b)(2)(B). For all of these reasons, it is hereby

ORDERED that the Debtors' current monthly income will be calculated based on gross receipts, notwithstanding any business expenses, for purposes of determining the Debtors' applicable commitment period under § 1325(b)(4).

*In re Wiegand,* 386 B.R. at 242 ("We presume that business expense deductions under § 1325(b)(2)(B) continue to be a factor in arriving at a debtor's disposable income under BAPCPA.") (citation omitted); *In re Sharp,* 394 B.R. at 216 ("Business expenses are, of course, deductible elsewhere in determining disposable income."); *In re Hageney,* 422 B.R. 254, 258 (Bankr.E.D.Wash.2009) (finding that debtor's business expenses could be deducted as "Other Necessary Expenses" when they are "necessary for the production of income" and "if the taxpayer substantiates and justifies the expenses.") (internal punctuation omitted).