Elizabeth E. Brown, Bankruptcy Judge
THIS MATTER comes before the Court on the Debtors' Motion to confirm their Chapter 13 Plan and the Objection lodged by the chapter 13 trustee ("Trustee"). Both parties have briefed the legal issue presented of how a chapter 13 debtor, who owns and receives income from a business, should calculate his "current monthly income" ("CMI") and, specifically, whether he may deduct business-related expenses before arriving at this income figure.
I. BACKGROUND
In this case, Mr. Gonzalez owns and operates a lawn care business called Rocky Mountain Lawn Pros LLC (the "LLC").[1] It performs lawn maintenance, landscaping, and snow removal services. He is the LLC's manager and sole member. While he asserts that he is merely an "employee" of the LLC, he does not receive a paycheck as a salaried employee. Instead he receives the net profit from the business. He calculates it by taking the LLC's gross revenue and subtracting out the LLC's expenses, such as contract labor, dump fees, insurance, tools, and various supplies.
*135 The resulting net income figure "passes through" the LLC and becomes his individual taxable income.
When the Debtors filed their chapter 13 petition on January 9, 2018, they filed a Form 122C-1 to calculate their CMI. As permitted on that form, Mr. Gonzalez listed the gross monthly income from the LLC and deducted ordinary and necessary operating business expenses to arrive at a net monthly income figure of $ 2,353. This figure combined with his wife's monthly salary gave the Debtors a total CMI of $ 4,093 per month or $ 49,127 per year. This amount is well below the median family income and, therefore, the Debtors filed a three-year plan.
The Trustee asserts that Debtors calculated their CMI incorrectly. He contends that it should include Mr. Gonzalez's gross, rather than net, business income. Under that scenario, Debtors' combined CMI would increase to $ 11,303.62 per month or $ 135,643.44 per year. This level of income is above the median family income, even for a family of six, which is the size of the Debtors' household. This would require them to propose a five-year plan. The Trustee acknowledges that the Debtors may appropriately deduct business expenses in determining their disposable income to fund a plan, but not when arriving at the CMI figure.
II. DISCUSSION
The length of time a debtor must make plan payments (his "applicable commitment period") is set forth in both § 1322 and § 1325.[2] Section 1325(b)(4) sets the floor and § 1322(d) sets the ceiling. Together these two statutes require a below-median income debtor to make payments for no less than three years and no more than five years. The above-median income debtor must make payments for no less than five years and no more than five years or, put more simply, for exactly five years.[3]
Whether a debtor is an "above-median income debtor" or a "below-median income debtor" is determined by whether his CMI is less than the "median family income." This term is defined in § 101(39A) to refer to the median income as calculated and reported by the U.S. Census Bureau in the most recent year. The Census Bureau bases its numbers on surveys. Its report contains a breakdown of median incomes by both the state of residency and the size of the household. For example, in Colorado, for a one-person household, the median income is $ 56,698. For a six-person household like that of the Debtors, the median is $ 111,272. U.S. Dept. of Justice, U.S. Trustee Program, Census Bureau Median Family Income by Family Size (Cases Filed Between November 1, 2017 and March 31, 2018 Inclusive) , https://www.justice.gov/ust/eo/bapcpa/20171101/bci_data/median_income_table.htm.
The Census Bureau's calculation of median income is based on the debtor's gross income before any deduction for taxes or basic costs of living. "Census money income is defined as income received on a regular basis ... before payments for personal income taxes, social security, union dues, medicare deductions, etc." United States Census Bureau, Income: About , https://www.census.gov/topics/incomepoverty/income/about.html (last revised Feb. 29, 2016). Thus, the Census Bureau excludes sources of income that are not "regular," such as an inheritance *136 or a severance payment, but it does not deduct taxes, which may regularly absorb as much as one-third of a debtor's income.
CMI is defined as "the average monthly income from all sources that the debtor receives ... without regard to whether such income is taxable income [during the historical six-month period prior to filing bankruptcy] ...." 11 U.S.C. § 101(10A) (emphasis added). Thus, CMI is a combination of all sources of income that a debtor "receives." There are three specific sources of income that are not included but none are relevant to this case. There is no mention in this definition of any deductions for personal or business expenses. It is focused solely on income.
For the average wage earner, these definitions and calculations are clear and simple to apply. We take the debtor's gross income and compare it to the Census Bureau's calculation based on both the debtor's location and household size. What is less clear is how we do this when the debtor's source of income is derived from a business that he owns. For example, assume that the debtor's business grosses income of $ 300,000, but after business expenses it only nets $ 20,000. If the debtor does not receive a salary from the business and only takes a distribution of the business's net profit, then he would only receive $ 20,000. For purposes of personal income taxation, he would only be taxed on this $ 20,000, not on the $ 300,000 of gross business revenue. See I.R.S. Pub. 334, Tax Guide for Small Business (For Individuals Who Use Schedule C or C-EZ , 2018 WL 1528048 (Jan. 29, 2018). Yet when we calculate this debtor's CMI, should we use the $ 300,000 gross revenues figure or the $ 20,000 net income passed on to the debtor? This is the question that this case presents. Many courts have weighed in on this question, but they do not agree on the answer.
At first blush, it would seem grossly unfair to use the $ 300,000 figure. After all, the debtor never sees anything but the $ 20,000. And requiring him to pay creditors based on the $ 300,000 figure would be impossible. In fact, the Code does not require him to make payments to creditors based on this phantom income figure. Plan payments to creditors are based only on his "disposable income." Disposable income for a below-income debtor is CMI minus the deduction of all kinds of expenses, business and personal. 11 U.S.C. § 1325(b)(2).
Congress could have, and perhaps should have, tied the applicable commitment period or the required plan length to the debtor's disposable income. Then it would not matter whether we deducted business expenses at the CMI stage or with the disposable income calculation as the result would be the same. But Congress did not tie plan length to disposable income.
If a Colorado debtor's business grosses only $ 80,000, it is his sole source of income, and he has a household size of six, then he is a below-median income debtor. Section 1325(b)(2)(B) expressly states that his disposable income is to be calculated after deducting "the payment of expenditures necessary for the continuation, preservation, and operation of [his] business." If the Code says it is to be deducted with the disposable income calculation, then by implication, it is not to be deducted at the CMI stage. Thus, at least with sole proprietorships, business expenses are not deducted from CMI. If the business grosses over the median family income, then this debtor must file a five-year plan, even though he receives a much lower net income from the business. This seems unfair and perhaps it is, but many courts have found that this is what the Code dictates.
*137 Courts are split on whether it makes a difference if the business has gross revenues above the median family income and has been incorporated or is held in another form of entity, such as an LLC. In that case, it is the LLC or the corporation that has "received" the $ 300,000. The debtor has only received the $ 20,000. In applying these statutes, courts have adopted two differing, but well-reasoned interpretations.
A. The Minority View
The Debtors urge the Court to follow the minority view, which holds that CMI should include only net business income (the "Net Income Approach"). E.g. , In re Roman , 2011 WL 5593143, at *3-4 (Bankr. D.P.R. Nov. 16, 2011) ; In re Romero , 2013 WL 241742, at *2 (Bankr. S.D. Fla. Jan. 22, 2013) ; In re Geiger , 2010 WL 2756760, at *4 (Bankr. N.D. Ohio July 12, 2010). These cases point out that Official Form 122C-1, which is the form on which debtors calculate CMI, has a specific section that instructs the debtor to net out business expenses from gross income to arrive at "Net monthly income from a business, profession or farm." Official Bankr. Form 122C-1, at ¶ 5.
Federal Bankruptcy Rule 9009 requires debtors to use this official form. The Judicial Conference of the United States approved it. Thus, the minority view argues that this form indicates that the Net Income Approach is the intended methodology. The Net Income Approach also conveniently aligns with how the IRS defines gross income derived from a business for tax purposes. See 26 C.F.R. § 1.61-3(a) (defining "gross income" as "total sales, less the cost of goods sold.").
One court has held that using gross business revenues earned by an S corporation as the sole shareholder's CMI is akin to piercing the corporate veil without proof of the elements of veil piercing. In re Geiger, 2010 WL 2756760, at *3 (Bankr. N.D. Ohio July 12, 2010). "The Court rejects Trustee's attempt to overlook the corporation framework and treat Debtor as a sole proprietor." Id. at *2. On the other hand, it is difficult to understand why Congress would want to treat debtors differently based on the form of business entity they have chosen. Why would Congress want to treat sole proprietors less favorably than the sole shareholder of an S corporation? See Mark A. Redmiles & Saleela Khanum Salahuddin, The Net Effect: Debtors with Business Income Are Permitted to Deduct Ordinary and Necessary Business Expenses in Calculating Current Monthly Income , 27 Am. Bankr. Inst. J. 16 (Oct. 2008) ; David P. Eron & Nicholas R. Grillot, Income Means Income-Except When It Doesn't , 31 Am. Bankr. Inst. J. 28, 28 (Oct. 2012).
B. The Majority View
The majority view recognizes the practical points made by the minority but nevertheless concludes that CMI is the gross business revenue (the "Gross Income Approach"). See Drummond v. Wiegand (In re Wiegand) , 386 B.R. 238, 239 (9th Cir. BAP 2008) ; In re Kuwik , 511 B.R. 696 (Bankr. N.D. Ga. 2014) ; In re Compann , 459 B.R. 478, 482-83 (Bankr. N.D. Ga. 2010) ; In re Harkins , 491 B.R. 518, 530 (Bankr. S.D. Ohio 2013) ; In re Sharp , 394 B.R. 207, 216 (Bankr. C.D. Ill. 2008) ; In re Arnold , 376 B.R. 652, 654 (Bankr. M.D. Tenn. 2007). These courts point to the definition of CMI contained in § 101, which in relevant part defines that term to include "the average monthly income from all sources that the debtor receives ... without regard to whether such income is taxable income ...." 11 U.S.C. § 101(10A) (emphasis added). It contains no provision for the deduction of any expenses, business *138 or otherwise. Leading chapter 13 commentators concur.
CMI is not 'net' of expenses incurred in the production of income unless an expense reduces income before it is "received" by the Debtor. CMI includes income the debtor 'received' from a business without regard to whether that income is taxable ... [and] even though some or all of that income is consumed by expenses that would be deductible for tax purposes.
Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy § 379.1, ¶ 21 (4th ed. 2007).
Courts adopting the Gross Income Approach focus on the fact that § 1325(b)(2)(B) specifically instructs below-median income debtors to deduct "expenditures necessary for the continuation, preservation, and operation of such business" when calculating disposable income. 11 U.S.C. § 1325(b)(2)(B). If business expenses are to be deducted from CMI, then it makes no sense to also deduct them when calculating disposable income because that would permit the debtor to deduct business expenses twice.
Instead, the majority position interprets § 1325(b)(2)(B) to require a debtor to deduct business expenses when calculating disposable income, not when calculating CMI. In Wiegand , the court ruled that "[w]e can conclude from the statutory language that the specificity of § 1325(b)(2)(B) controls-business deductions are to be taken from a debtor's current monthly income to arrive at the debtor's disposable income." Drummond v. Wiegand (In re Wiegand) , 386 B.R. 238, 242 (9th Cir. BAP 2008). To interpret it otherwise would, in the majority's view, allow for either a double deduction of business expenses, or it would render § 1325(b)(2)(B) superfluous. In re Harkins , 491 B.R. 518, 536 (Bankr. S.D. Ohio 2013).
The majority view acknowledges that its interpretation conflicts with Form 122-C. However, "when an Official Bankruptcy Form conflicts with the Code, the Code always wins." In re Wiegand , 386 B.R. at 241. Courts and commentators alike have called for revisions to the Official Form so that it better aligns with the Code, but no change has occurred, even though the Judicial Conference revised this form (formerly Form B-22C) in 2015.
The majority also claims that its interpretation of § 1325(b)(2)(B) aligns with pre-BAPCPA practice. "Pre-BAPCPA bankruptcy practice is telling because [courts] will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure." Hamilton v. Lanning , 560 U.S. 505, 517, 130 S.Ct. 2464, 177 L.Ed.2d 23 (2010) (internal citation omitted) (" Lanning "). Before BAPCPA, business expenses were deducted from "income received by the debtor" to determine "disposable income" pursuant to § 1325(b)(1)(B). "Congress could have moved the deduction for business expenses from § 1325(b)(2)(B) to § 101(10A), but it did not." In re Kuwik , 511 B.R. 696, 702 (Bankr. N.D. Ga. 2014).
Reliance on pre-Code practice in this area, however, seems dubious to this Court. BACPA introduced numerous substantial changes to the calculation of income and expenses. To name a few, it introduced the term CMI, a historical income test. 11 U.S.C. § 101(10A). It brought into the Code the distinction between above- and below-median income debtors. See Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy § 438.1, ¶ 4 (4th ed. 2007). It forced above-median income debtors to submit to a five-year plan. 11 U.S.C. § 1325(b)(4)(A)(ii). The *139 Code has always required a chapter 13 debtor to pay his "projected disposable income" over the life of his plan. The addition of "projected" to the disposable income analysis under pre-BAPCPA law was always understood to be a mere multiplier (disposable income multiplied by the number of months covered by the plan) rather than a reassessment or "projection" of disposable income in the future. But in Lanning, the Supreme Court held that "projected" now means that courts can alter the historical income figure of CMI and/or the allowable expense deductions to account for changes that are known or virtually certain to occur during the life of the plan. Hamilton v. Lanning , 560 U.S. 505, 517, 130 S.Ct. 2464, 177 L.Ed.2d 23 (2010).
BAPCPA also injected brand new criteria for the deduction of expenditures by above-median income debtors. Pre-BAPCPA, the Code allowed all chapter 13 debtors who were engaged in business to deduct "payment of expenditures necessary for the continuation, preservation, and operation of [the] business." 11 U.S.C. § 1325(b)(2)(B) (2000), amended by Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109-8, 119 Stat. 23 (2005). Since the adoption of BAPCPA, the above-median income debtor must now look to the permitted deductions under the means test set forth in § 707(b)(2). 11 U.S.C. § 1325(b)(3). The problem is that § 707(b)(2) makes no provision for business expenses. It states that a debtor's expenses "shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service." 11 U.S.C. § 707(b)(2)(A)(ii). The National and Local Standards and the Other Necessary Expenses referred to in this section are part of the IRS's Collection Financial Standards, which are contained in its Financial Analysis Handbook ("Handbook"), available at http://www.irs.gov/irm/part5/irm_05-015-001.html.
The Net Income Approach deducts business expenses from CMI, so it does not have to reach this issue. But it does so without any supporting language in § 101(10A). Many courts adopting the Gross Income Approach argue that an above-median income debtor can appropriately deduct business expenses as "Other Necessary Expenses." The IRS Handbook does not define "Other Necessary Expenses." Rather, it merely states that "[o]ther necessary expenses that meet the necessary expense test are normally allowed." Handbook § 5.15.1.11. The Handbook then goes on to list sixteen categories of possible "other expenses" and describes when those expenses would be considered "necessary." Id. Those categories are: accounting and legal fees, charitable contributions, child care, court-ordered payments, dependent care, education, involuntary deductions, life insurance, secured or legally perfected debts, other unsecured debts , current year taxes, delinquent state and local taxes, optional telephones and telephone services, student loans, and repayment of loans made for payment of federal taxes. Id. at ¶ 3 (emphasis added). Business expenses are notably absent from this list.
Nevertheless, many courts adopting the Gross Income Approach point out that Congress intended the Handbook's list of Other Necessary Expense categories to be non-exclusive. In re Kuwik , 511 B.R. 696, 705 (Bankr. N.D. Ga. 2014) (citing H.R. Rep. No. 109-31, at 100 n.66 (2005) ). Courts also focus on the Handbook's "necessary expense test," which states that necessary expenses include those "that are necessary to provide for a taxpayer's and his or her family's health and welfare *140 and/or production of income. " Handbook § 5.15.1.8 (emphasis added). Since business expenses are generally necessary for a business owner's production of income, courts reason that this definition is broad enough to allow for deduction of business expenses as "Other Necessary Expenses" in the means test. In re Kuwik , 511 B.R. at 705 ; In re Arnold , 376 B.R. 652, 655 (Bankr. M.D. Tenn. 2007).
Some advocates of the Gross Income Approach point out that business expenses could also be included in the "other unsecured debt" category of Other Necessary Expenses. The Handbook states that "[e]xamples of unsecured debts which may be necessary expenses include: payments required for the production of income such as payments to suppliers and payments on lines of credit needed for business." Handbook § 5.15.1.11, ¶ 3. However, after instructing reliance on the Handbook's categories of Other Necessary Expenses, § 707(b)(2)(A)(ii)(I) then includes the following sentence: "Notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts." 11 U.S.C. § 707(b)(2)(A)(ii)(I). This sentence creates an interpretive knot that may be impossible to untangle, according to one commentary source:
By definition, an obligation in the category "Unsecured Debts" is a "debt" excluded from allowable expenses by the "notwithstanding" sentence. This leads to the uncomfortable conclusion that Congress granted Chapter 13 debtors with CMI greater than applicable median family income an expense allowance in a category of Other [Necessary] Expenses specified by the IRS but then emptied that category of all meaning two sentences later in § 707(b)(2)(A)(ii)(I). It is not obvious what magic of statutory interpretation will avoid this strange aspect of [BAPCPA].
Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy § 477.12, ¶ 7 (4th ed. 2007).
However, the Gross Income Approach can still give meaning to the "notwithstanding" sentence in § 707(b)(2)(A)(ii). The intent behind the means test in § 707(b) is to ferret out those debtors who could make a meaningful repayment through a chapter 13 plan. If they could, then the means test dismisses their case unless they convert to chapter 13 (or chapter 11). To work the formula, the debtor determines his CMI and then deducts certain specified expenses. The "notwithstanding" sentence tells the debtor that, in making his deductions, he cannot deduct "any payments for debts." This reference to "debts" is not as broad as it appears. It only refers to the debtor's prepetition, non-priority, unsecured debts (the "Debts"). We know this because other provisions of the means test expressly provide for the deduction of secured debt payments ( § 707(b)(2)(A)(iii) ) and priority debt payments ( § 707(b)(2)(A)(iv) ). Therefore, the "notwithstanding" sentence would not prevent a debtor from deducting future business expenses necessary to the production of future income. It only prevents him from deducting the Debts because otherwise it would not represent a true picture of how much Debt the debtor could repay in the future.
Courts following the Gross Income Approach further point out that their interpretation harmonizes the provisions of § 1325(b)(2) and § 1325(b)(3). Congress explicitly instructs below-median income debtors to deduct business expenses in the disposable income calculation in § 1325(b)(2). "There simply is not a sufficient basis in the Code, legislative history, pre-amendment practice or the policies underlying *141 BAPCPA to interpret § 1325(b)(3) to wipe out the express provision for the deduction of business expenses contained in § 1325(b)(2)(B). In re Kuwik , 511 B.R. 696, 705 (Bankr. N.D. Ga. 2014) ; see also In re Harkins , 491 B.R. 518, 539 (Bankr. S.D. Ohio 2013) ("It would make no sense to interpret 1325(b)(3) to take away what § 1325(b)(2)(B) so plainly gives.").
C. This Court's Interpretation
The Court dislikes both interpretations. The Net Income Approach reads into the definition of CMI the ability to deduct business expenses, without any statutory support. By doing so, it renders meaningless § 1325(b)(2)(B)'s deduction of business expenses at the disposable income phase for below-median income debtors or, worse, it allows for duplication of these deductions. On the plus side, the Gross Income Approach treats both above- and below-median income debtors alike, deducting business expenses only at the disposable income level. It can also be interpreted to treat sole proprietors the same as small business owners who conduct business through a corporation or LLC. But it requires interpretive backflips to read into the Code a deduction of business expenses for the above-median income debtor.
The passage of BAPCPA took many years. Reform legislation was first introduced in 1997. After many revisions, BAPCPA was signed into law in 2005. Despite this prolonged negotiation period, the final version of BAPCPA has been roundly criticized as poorly crafted, containing a multitude of "typos, sloppy choices of words, hanging paragraphs, and inconsistencies .... [as well as] "largely pointless but burdensome new requirements, overlapping layers of screening, mounds of new paperwork, and structural incoherence." Jean Braucher, The Challenge to the Bench and Bar Presented by the 2005 Bankruptcy Act: Resistance Need Not Be Futile , 2007 U. Ill. L. Rev. 93, 97 (2007). Why Congress did not endeavor to fix these issues before passage is unknown.
This Court's best guess is that § 1325(b)(3) contains one such typographical error. Subsection (2) was intended to lay out the general formula for all debtors to determine disposable income. This subsection allows deduction for "reasonably necessary:" (1) personal expenses ( (b)(2)(A)(i) ); (2) charitable deductions ( (b)(2)(A)(ii) ), and (3) business expenses ( (b)(2)(B) ). Without the addition of subsection (b)(3), all debtors could clearly deduct business expenses. Subsection (b)(3) states that amounts reasonably necessary to be expended under paragraph (b)(2), other than charitable contributions, shall be determined in accordance with the means test in § 707(b) for above-median income debtors. If Congress had limited the scope of (b)(3) to amounts reasonably necessary to be expended under paragraph (2)(A)(i), then it would have been clear that the only substitution for above-median income debtors would be a different set of deductions for personal expenses. The means test only covers personal and family household expenses. It does not speak to the issue of business expenses. Or Congress could have drafted (b)(3) to make an exception for both charitable contributions and business expenses, again leaving the scope of (b)(3) to be a substitution of only personal expense deductions. Either way there was likely a slip of the pen in drafting subsection (b)(3).
Without rewriting the Code in some manner, there appears to be no way to construe all these statutory provisions harmoniously. It gives the Court great pause to reach this conclusion because usually, with enough study and thought, the seemingly *142 inconsistent provisions of the Bankruptcy Code are unraveled, and the Court is left with a greater appreciation for how expertly the Code provisions have been woven together. In this instance, however, the Court is unable to find the cohesive thread. As a result, the Court is faced with a sort of Sophie's choice.
When statutes cannot be construed harmoniously, courts must engage in an interpretative process to attempt to discern the legislature's intent. In doing so, "[c]ourts may consider the history of the subject matter involved, the end to be attained, the mischief to be remedied, and the purpose to be accomplished." Norman J. Singer & Shambie Singer, Statutes and Statutory Construction § 45:5 at 39 (7th ed. 2014).
Based on legislative history, the Supreme Court identified the heart of the consumer reforms enacted by BAPCPA. It is "to ensure that [debtors] repay creditors the maximum they can afford." Ransom v. FIA Card Serv., N.A., 562 U.S. 61, 71, 131 S.Ct. 716, 178 L.Ed.2d 603 (2011) (quoting H.R. Rep. No. 109-31, pt. 1, at 2 (2005) ). It is through this overall lens that we must construe these provisions.
With this focus, the Net Income Approach has immediate appeal. A debtor who receives only $ 20,000 from his business cannot possibly repay based on gross revenues of $ 300,000. But both approaches recognize that the Bankruptcy Code only requires a debtor to repay based on his disposable income and not on his CMI alone. Thus, we are not talking about how much a debtor pays into his plan. We are only concerned with how long his plan must last. Under the Gross Income Approach, which only allows the deduction of business expenses at the disposable income stage, many more debtors will be forced to remain in chapter 13 for five years. That result might well have been intentional. It certainly fits with the overall goal of making debtors repay the maximum they can afford.
Clearly, a below-median income debtor who operates a business as a sole proprietor deducts his business expenses only when calculating disposable income pursuant to § 1325(b)(2). Congress would never have intended for him to deduct the same expenses twice - initially with CMI and then again with disposable income. Duplicating the expenses would violate the underlying purpose of maximizing creditor return based on what a debtor can realistically pay.
Thus, with great reluctance, this Court adopts the Gross Income Approach. The fact that § 1325(b)(2) requires the deduction of business expenses during the disposable income calculation seems indicative of Congressional intent to have debtors deduct business expenses at that point rather than at the CMI stage. Form 122C-1's net income calculation completely ignores this specific provision of the Code. It also makes better sense to the Court to interpret § 1325(b)(3) in a manner that is consistent with § 1325(b)(2). This Court can conceive of no reason why Congress would prevent above-median income debtors from deducting business expenses in the disposable income calculation while at the same time allowing below-median income debtors to do so.
This Court agrees with the majority that the Code's failure to address deduction of business expenses by above-median income debtors "has to be a fundamental mistake in the deconstruction of the disposable income test by BAPCPA." Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy § 477.12, ¶ 10 (4th ed. 2007). Indeed, as pointed about by retired Judge Lundin, Congress created similar *143 confusion with its treatment of deductions of charitable contributions. The initial version of BAPCPA permitted below-median income debtors a special expense deduction for charitable deductions in § 1325(b)(2)(A) but made no such provision for above-median income debtors in § 1325(b)(3). Congress fixed the problem in 2006 by amending § 1325(b)(3) to apply the charitable contribution deduction described in § 1325(b)(2)(A)(ii) to above-median income debtors. Id. at § 477.12, ¶ 11 (citing 11 U.S.C. § 1325(b)(3), as amended by the Religious Liberty and Charitable Donation Clarification Act of 2006, Pub. L. 109-439, 120 Stat. 3285 (Dec. 20, 2006) ). Unfortunately, Congress did not take that opportunity to also clarify the deduction of business expenses by above-median income debtors. Without a legislative fix, the Court regrettably sides with the majority in finding that the deduction of business expenses as Other Necessary Expenses is consistent with the description of Other Necessary Expenses in the Handbook, as well as the language of § 1325(b)(2).
Although the Gross Income Approach may unfairly target many small business owners, is not inconceivable that Congress intended for these debtors to submit to five-year plans. Congress could have chosen to tie the length of a debtor's plan to his disposable income, but it did not. Essentially, this is what the Debtors are arguing for - a test tied more realistically to a debtor's ability to pay. If his disposable income is below the median threshold, then he should not have to pay for five years. This has strong emotional appeal. Everyone knows that chapter 13 debtors struggle to make plan payments and, the longer the plan, the harder it is to remain on its strict budget. Nevertheless, we must presume that, when Congress tied plan length to the Census Bureau's calculation of median-income status, it knew it was tying it to a gross income figure. It makes little difference whether that income is derived from a business the debtor owns or his wages.
It is interesting that the Census Bureau, which derives its calculation of median income from survey responses, notes that "there is a tendency in household surveys for respondents to underreport their income," but less so with "income earned from wages or salaries [than with] other sources of income...." United States Census Bureau, Income: About , https://www.census.gov/topics/income-poverty/income/about.html (last revised Feb. 29, 2016). Knowing this could explain why Congress tied plan length to gross income rather than net. When a debtor is a small business owner, in whatever legal form, there is a greater chance for underreporting of income. A small business owner has a great deal of discretion in determining what expenses the business will incur and pay before distributing net profit. In this case, the Trustee alleges that the LLC has paid many of the Debtors' personal expenses. Perhaps Congress "simply did not want those persons generating significant revenues through a business to have access to three-year chapter 13 plans." Drummond v. Wiegand (In re Wiegand) , 386 B.R. 238, 243 (9th Cir. BAP 2008). Under this interpretation, the only business owners who may file a three-year plan are those in which the business does not generate substantial income (above the median income threshold).
III. CONCLUSION
For the reasons stated, the Court concludes that the Debtors must file a five-year plan. Therefore, the Court DENIES confirmation of the Debtors' plan. Debtors must file a new plan within fourteen days of the date of this Order.

Debtor Patricia Gonzalez is employed as a paraprofessional for a school district and earns a gross salary of $ 1,740 per month.

All references to "§" or "section" shall refer to Title 11, United States Code, unless expressly stated otherwise.

Of course, if the debtor pays all claims in full, then he or she may propose a shorter plan length. 11 U.S.C. § 1325(b)(4)(B).